619 So.2d 655 (1993)
William R. RESTER
v.
Jane Granger, wife of/and Wedney MANUEL and Linda Manuel Rester.
No. 92-CA-831.
Court of Appeal of Louisiana, Fifth Circuit.
May 12, 1993.
*656 Michael A. Duplantier, New Orleans, for plaintiff, appellee.
D.S. "Terry" Fitzgerald, Jr., Fournet & Adams, Ltd., Lafayette, R.O. Lewis, Luling, for defendant, appellant.
Before KLIEBERT, BOWES, GRISBAUM, WICKER and CANNELLA, JJ.
*657 WICKER, Judge.
Linda Manuel Gober, formerly Mrs. William Rester, appeals a judgment awarding her former husband certain visitation rights with the children of the marriage and making provisions with regard to child support arrearages owed her. The issues in the case are proof of alleged sexual abuse of the children by Mr. Rester, the appellee; suitability of the arrangements for restricted visitation; ownership of the arrearages; and Mr. Rester's liability for one-half of the children's health care expenses. We modify in part and, as modified, affirm; remand in part, modify in part, recast and render; and reverse in part and render.
Mrs. Gober and Mr. Rester were married in 1980 and subsequently had two children, Ryan, now eleven years old, and Kylie, now ten. They divorced in Texas in 1987, with Mrs. Gober receiving physical custody of the children and Mr. Rester visitation. That Texas judgment presaged some of the problems that we are presently dealing with: the parties were mutually enjoined from disparaging each other to the children and from using alcohol or drugs around the children.
Alleging that his former wife had secreted herself and the children from him and denied him visitation rights, and that her parents knew about it, Mr. Rester sued Mrs. Gober and her parents, Wedney and Jane Manuel, in St. Charles Parish, domicile of the Manuels, in August of 1990. He claimed tortious interference with his parental rights and asked for money damages. Mrs. Gober reconvened, alleging that Mr. Rester had sexually abused the children and failed to pay child support. Then Rose Rester, Mr. Rester's mother, moved for an award of visitation with her grandchildren; and Mr. Rester sued for a change of custody and later, for blood tests to determine paternity.
Numerous depositions, hearings, and writ applications ensued, all ultimately resulting in the judgment which Mrs. Gober has appealed. The judge awarded sole custody of the children to their mother, with a proviso that she and the children have therapy. He granted Mr. Rester visitation with the children, supervised by his mother, with the proviso that he also continue in therapy. He dismissed with prejudice Mr. Rester's claims for tortious interference against Mrs. Gober and Mr. and Mrs. Manuel. Finally, he awarded Mrs. Gober part of the accumulated arrearages of child support; but he ordered the bulk of the past due money to be put into a trust fund, with Mr. Rester and his mother as trustees, for the children upon their majority.
In his ruling from the bench, the judge referred to this case as a "soap opera." He noted that the parents had managed to bring the children "to the brink of destruction," and he opined that this was one of the cruelest cases he'd ever heard. He ruled that neither of Mr. Rester's parents had been guilty of sexually abusing the children, as Mrs. Gober had alleged, and that there had been no proof that Mr. Rester had molested Kylie. With regard to Ryan, he stated that Mrs. Gober had "not proven her case beyond a reasonable doubt that [Mr. Rester was] a child sexual abuser." And, he continued, if Mr. Rester had sexually abused Ryan, "certainly nothing will ever take place like that again." However, he noted that the children believe that they have been sexually abused. He concluded "this has got to be gotten over with. Everybody has got to return to their normal life, normal living."
Mrs. Gober assigns several alleged errors: that the judge imposed a "beyond a reasonable doubt" burden of proof rather than a "preponderance of the evidence" burden of proof; that he permitted visitation despite Mr. Rester's failure to prove such visitation wouldn't be harmful to the children; that he ordered arrearages placed in a trust fund; and that he failed to order Mr. Rester to pay one-half the children's health care expenses not otherwise covered by insurance.

PROOF OF SEXUAL ABUSE
The evidence establishes that the marriage was filled with conflict from the start and remained chaotic until its end. The children, born one and two years after the marriage respectively, first seemed to unify *658 the Resters but then became an additional source of conflict. Mr. Rester and Mrs. Gober were unable to agree on their upbringing and discipline, with the mother accusing the father of spoiling the children and the father accusing the mother of harshly disciplining them. Both parents seemed to use alcohol excessively, and Mrs. Gober probably used drugs as well. The situation was exacerbated by frequent changes of residence as a result of job transfers. Finally, in the summer of 1987, Mrs. Gober took the children and left; and all questions of custody, visitation, support, and property division were reduced to judgment by a Texas court.
During 1987 and part of 1988, Mr. Rester's visits with the children were generally uneventful. However, Mr. Rester lost his job in 1988; and his job-hunting trips made his visits erratic. He did visit frequently by telephone. In addition, his child support payments became equally erratic; and Mrs. Gober frequently threatened to withhold visitation unless payments were made.
Mrs. Gober admitted herself to a residential treatment facility, The Meadows, for treatment of co-dependency and substance abuse in May of 1989. She turned temporary custody of the children over to her parents, Mr. and Mrs. Manuel, for the six weeks of her treatment. From this point on, with the exception of a weekend visitation over Father's Day in 1989, she has refused to allow any contact between Mr. Rester and his children.
Mr. Rester did not know where his ex-wife and children were living, although he had a post-office box number and was able to obtain news of them through the Manuels. He allegedly initiated this proceeding in an attempt to find the children and enforce his visitation rights. Since then, he has seen Kylie and Ryan one time, in September of 1991, by court order.
The record is filled with allegations and evidence of the parents' shortcomings both as parents and spouses, but much of this is irrelevant to the one issue: whether and how Mr. Rester can be allowed to visit with the children.
The primary consideration in awarding visitation, as custody, is the best interest of the children. La.C.C. art. 132. It is clear that Ryan and Kylie believe they have been abused by their father and, to a much lesser extent, by their paternal grandmother, from about age four or five. Whether or not abuse has been proven is not the only relevant factor in determining whether or not visitation, and under what circumstances, is in the best interest of these children at this time. Therefore, we make no ruling on the adequacy of proof of sexual abuse, although we note that the standard of proof is preponderance of the evidence and not beyond a reasonable doubt. La.C.C. art. 133 A. We are mindful of the grief and hardship caused a father and grandmother who might be wrongly accused and consequently deprived of visitation, but their interests are less important than those of the children. All the experts testified that it was in the long-term best interests of Ryan and Kylie that, at some point, their relationship with their father should be carefully and gradually reestablished.
These children began seeing mental health professionals in May of 1989, during a family weekend while their mother was an in-patient at The Meadows, a treatment center; and they were still seeing mental health professionals at the time of the trial. Some of these visits were for evaluation and some for therapy, and the professionals ranged from a certified alcohol and drug abuse counselor to a psychiatrist. No one who testified, except the children themselves, witnessed any sexual abuse of the children; and Mr. Rester vehemently denied it. His lay witnesses spoke of a warm, loving father-child relationship; and he introduced an audiotape of a telephone conversation with the children and a videotape of one court-ordered visitation which appear to show a normal affectional relationship.
Ryan, age ten and a half at the time, told the judge he felt "uncomfortable" visiting his father, even in the company of other relatives and despite the toys his father gave him. He told of his father's having *659 touched his genitals and threatened to hurt him, his sister, or his mother if he told anyone. Ryan's fear of his father stemmed from that threat. He also told of sharing the same bed with his father and girlfriend and his sister and of watching pornographic movies together. Ryan said of his father, "I couldn't forgive him. Because, I mean, if he thinks he's supposed to be a father to me and my sister, how come he would do that?" Ryan said he didn't want to visit with his father now but "when I'm older ... I wouldn't mind seeing him if he got help or something."
Kylie, then age nine, told the judge her father touched her on her back side and front. She said, "the things he did to me, I didn't like that, you know, I really don't want to see him no more, you know. And he frightens me, you know." She concluded that she never wanted to see her father or his relatives again.
Both children told of playing a "game" with their paternal grandmother where they made her breasts bounce.
The judge appointed an independent expert to evaluate the family in September of 1990, William Janzen, Ph.D., a psychologist. He met with each child and parent three times and administered a standard psychological test. Ryan told him the same story of sexual abuse and threats. Kylie told him of "really bad stuff" her father did, including putting his hands inside his underwear and watching pornographic movies. Dr. Janzen concluded that, as far as Ryan is concerned, "the possibility of sexual abuse definitely needs to be considered in this case.... [G]iven that Ryan really believed, appeared to believe that he was sexually abused, I feel that it still needed to be handled in a similar manner as if he were." With regard to Kylie, he concluded "there may have been some inappropriate behavior on the father's part." He made certain recommendations concerning visitation:
[S]ince the possibility of sexual abuse has to be considered in this case I do not feel that unsupervised visits would be appropriate at this time. However, even if there were not allegations of sexual abuse but the children felt as they do at the present time I would still recommend supervised visitation as opposed to unsupervised visitation. In other words, if the children were fearful as they are now but there were no allegations of sexual abuse, supervised visitation would be in the children's best interest.
Dr. Janzen strongly recommended against the parties' continuing efforts to prove or disprove the allegations of sexual abuse as being contrary to the children's best interests and recommended against continuing to come to court. He recommended that the visitation, at least at the beginning, should be supervised by a professional, so that individual would be available to deal with the childrens' negative reactions. The supervising professional should be someone not involved with the case, someone without definite opinions, and someone who won't take sides. Depending on how these visits went, a lay person could supervise later visits; however, in this case, it would not be advisable to use a relative except, possibly, a distant relative who is not involved. He recommended that visits begin with a couple of hours with the professional and gradually move to a full day supervised by a lay person, perhaps someone from the church. He stressed that the children should be prepared by Mrs. Gober and their therapist for these visits. Assuming the paternal grandmother is normal, healthy, and caring, he saw no problem with including her in these visits; however, he felt it would be a mistake to use her as supervisor of the visitation. Finally, he recommended against telephone visits until the children's therapist thinks they are ready for it.
Wendy Bengsten, a certified alcohol and drug addiction counselor, had been seeing Ryan and Kylie since about December of 1991 and is Mrs. Gober's therapist as well. Ryan told her, and she believed him, that Mr. Rester had sexually abused him and that Ryan thinks this is his fault and has talked about killing himself. She believed that Ryan and Kylie were terrified of their father. She recommended that visitation, if any, be supervised by someone the children *660 feel safe with. She expressed fear that Ryan might find a way to kill himself if he were forced to visit with Mr. Rester.
M. Kathie Weber, a board-certified social worker specializing in sexual abuse of children, began seeing Mrs. Gober and the children in September of 1991, right after the court-ordered visit with Mr. Rester and on referral from Dr. Janzen. Kylie told her she didn't want to visit with her father and had tried to run away; Ryan said he was scared, mad, and sad and that he had tried to stab himself with scissors at school to avoid the visit. Her focus was therapy for the children and not the truth of the sex abuse allegations, but she did say that Kylie exhibits the symptoms of a sexually abused child. Ms. Weber eventually referred Ryan to DePaul Hospital because of his increasingly violent behavior and threats to drown himself in the bathtub. Both children exhibited fear of Mr. Rester and his mother. She continued to treat Kylie after Ryan went into the hospital, and she believed that Kylie's level of fear would have to decrease before any visitation took place and the visit would have to be in a safe environment with supervision by someone Kylie feels safe with. She concluded that if it can be safe and not traumatizing for the children, it would be in their best interest to have a relationship with their father.
Rene Duffourc, M.D. was Ryan's psychiatrist at DePaul; and he was concerned about Ryan's anger, loss of control, and threats to hurt himself. Ryan did tell him that he didn't feel he really wanted to die but that when he got very angry and upset he would think about hurting himself because he didn't know what to do with himself. He recommended that any visitation be supervised so that Ryan would feel safe and he, like Dr. Janzen, recommended an end to these legal proceedings. Dr. Duffourc testified that Ryan believes he was sexually abused and that he believes Ryan; however, the focus of the therapy was not sexual abuse.
Fred Ahlers, M.S.W. also treated Ryan at DePaul's and later as an out-patient. Ryan told him substantially the same story of sexual abuse, anger, and fear; and Mr. Ahlers thought he was telling the truth. He thought it would be important for Ryan eventually to talk to his father and reconcile, perhaps in a therapeutic setting; and he thought visitation would be all right when Ryan feels comfortable with it. He noted it was important to listen to what Ryan has to say about how he wants the relationship to be reestablished. These first visits, at least, should be supervised by a professional.
Hunter Shirley, Ph.D., a psychologist, worked with both children in October and November of 1990, on referral from Barbara Cherry, a Texas counselor. He, too, was told of abuse, threats, and fear. Ryan was suffering from post-traumatic stress disorder and went into shock when he thought about his father; Kylie was blocking things and in denial, although she complained about Mr. Rester's playing with his genitals while he and the children watched X-rated movies. She told him her father's erection bothered and embarrassed her. Dr. Shirley also met with Mrs. Gober, and he believed both she and the children were telling the truth. Dr. Shirley testified that even supervised visitation would frighten and terrify Ryan
but if the father were very kind to him and showed him that he wasn't angry and resentful about what the child told and began to build a loving relationship, after a while it could be probably built up again. But he would have to win the child over, over a period of time, under supervision, before that could happen.
Allen Jason Coe, M.D., Mr. Rester's psychiatrist, testified that there was nothing in his four interviews to suggest that Mr. Rester was molesting his children but he couldn't definitely rule it out. He recommended that the parents stop fighting over the children and reestablish supervised visitation until the court is comfortable with unsupervised visitation. He suggested the court could appoint a professional "who could monitor and reevaluate the situation and make specific recommendations for continuing therapy." He recommended *661 against using a family member to supervise visitation.
In light of the unanimous expert opinions, we believe the judge abused his much discretion both in the quantity and quality of visitation. We modify part of the judgment governing visitation, recast it, and render; and we remand for the limited purpose outlined in the decree.

CHILD SUPPORT
Mrs. Gober sued Mr. Rester for past due child support, mostly accumulating during the period when Mr. Rester was unable to exercise visitation with the children. The total amount of the award, $29,776.77, is uncontested. However, Mrs. Gober has appealed that part of the award, $24,275.52, which the judge ordered placed in trust for the children, with Mr. Rester and his mother as trustees, until their majority. Mr. Rester argues, "[s]ince the evidence showed that the appellant had a history of drug and alcohol abuse and emotional instability, the court apparently concluded that in the best interests of the children, these support funds would be better secured for the children through the trust arrangement."
La.C.Civ.P. art. 3945 governs the award of child support arrearages and gives the "party entitled thereto" the right to make the amount executory. Mrs. Gober is the "party entitled" to the award, and it is her property. Townsend v. Townsend, 421 So.2d 969 (La.App. 3rd Cir.1982), writ denied 427 So.2d 1211 (La.1983).
There was not the slightest evidence that Mrs. Gober misused or mishandled child support funds during the two year period between their divorce and the beginning of the visitation problems or that she is incapable of making sound decisions for her children's financial well-being. On the contrary, the evidence shows that she has a stable and solid remarriage to a man who has the best interest of his wife and these children at heart and that she is actively in therapy. While we do not condone, in most circumstances, keeping a father from visiting his children, there were exceptional circumstances in this case which made Mrs. Gober feel justified in doing what she did.
We believe the judge abused his discretion in refusing to award Mrs. Gober the arrearages which were admittedly due. Under the circumstances however, we do not believe an award of attorney's fees in Mrs. Gober's favor would be appropriate. We modify the judgment and affirm it.

MEDICAL EXPENSES
Mrs. Gober finally appeals the judge's failure to award her one-half the medical expenses she incurred on behalf of the children. Mrs. Gober proved that these expenses totaled $904.00, and the Texas judgment of divorce clearly entitled her to reimbursement. Therefore, we reverse the judge's implicit denial of this relief and enter judgment.

CONCLUSION
We modify, recast, and render a decree awarding custody of the minor children, RYAN R. RESTER and KYLIE R. RESTER, to their mother, LINDA MANUEL GOBER, and supervised visitation to their father, WILLIAM RESTER, which decree outlines conditions regarding said custody and visitation. We remand for the appointment of a mental health professional. We modify and, as modified, affirm the judgment of arrearages in LINDA MANUEL GOBER's favor and against WILLIAM RESTER. We reverse the denial of reimbursement for medical expenses and render judgment in LINDA MANUEL GOBER's favor and against WILLIAM RESTER. In all other respects, the judgment below, insofar as it was not appealed, remains intact. WILLIAM RESTER must pay the costs of this appeal.

DECREE
IT IS ORDERED, ADJUDGED, AND DECREED that RYAN R. RESTER and KYLIE R. RESTER shall remain in the sole care, custody, and control of their mother, LINDA M. GOBER.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that WILLIAM R. RESTER shall be granted supervised visitation with the minor children as follows:
*662 1. The trial judge shall appoint, on recommendation of Dr. Janzen, a mental health professional to supervise the visitation and report by mail to the judge at six-month intervals; and the matter shall be remanded for the limited purpose of this appointment;
2. The third weekend of each month Mr. Rester shall have two hours' visitation in the Lake Jackson area, such visitation to be supervised by the mental health professional;
3. At the end of six months' visitation as above, and with the concurrence of the mental health professional, he shall have eight hours' visitation in the Lake Jackson area on the third weekend of each month, such visitation to be supervised by the professional and to be held at a location chosen by that professional;
4. At the end of one years' visitation as outlined in paragraphs 1 and 2 above, Mrs. Gober and the mental health professional, with input from Kylie and Ryan, shall choose a responsible lay person to supervise future visitation; and Mr. Rester shall thereafter have visitation in the Lake Jackson area from Friday evening at 7:00 P.M. until Sunday evening at 7:00 P.M. the third weekend of every month, provided the professional agrees that the children are ready for weekend visits;
5. At the end of one year of weekend visits, and with the concurrence of the mental health professional, he shall have a total of two weeks' visitation in the New Orleans area, supervised by the lay person, with the exact dates and transportation arrangements to be agreed upon no less than one month prior to the visit or visits;
6. At the option of Mr. Rester, and with the concurrence of the mental health professional, his mother, Mrs. Rose Rester, may be included in any of these visits;
7. He shall have the right to telephone the children one time per week in any week in which he does not otherwise have visitation; and Mr. Rester and Mrs. Gober shall provide each other with a telephone number.
8. The trial judge shall review the progress of visitation by written report only submitted by the mental health professional, at six-month intervals; and
9. In all matters pertaining to visitation, the reports and recommendations of the court-appointed mental health professional shall be entitled to very great weight.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that
1. The children shall continue therapy with a licensed mental health professional in the Lake Jackson area for an average of one hour per week per child and both Mrs. Gober and Mr. Rester shall be entitled to progress reports and records;
2. Mrs. Gober shall continue weekly therapy with a licensed mental health professional, weekly meeting and support groups such as NA and/or AA; and
3. Mr. Rester shall continue therapy with Allen Jason Coe, M.D. at least twice a month.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this visitation schedule shall be subject to review by the trial court and can be further limited or increased should circumstances so warrant according to the best interests of the children, the reports of the mental health professional, and considering the recommendation of the experts that it is in the best interest of these children that litigation concerning them be concluded.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that neither party nor the children's therapist(s) shall make any derogatory remarks about the other party in the presence of the minor children nor seek in any manner whatsoever to negatively influence or disparage the relationship of the minor children with either parent.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that LINDA MANUEL GOBER's rule for past due child support be granted making past due child support executory in the amount of TWENTY-NINE THOUSAND SEVEN HUNDRED SEVENTY-SIX AND 77/100 DOLLARS *663 ($29,776.77) plus legal interest from the date each payment was due.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that judgment shall be entered in favor of LINDA MANUEL GOBER in the amount of FOUR HUNDRED FIFTY-TWO AND NO/100 DOLLARS ($452.00), plus legal interest from the date of demand.
JUDGMENT MODIFIED IN PART, RECAST, AND RENDERED; REMANDED IN PART; MODIFIED IN PART AND, AS MODIFIED AFFIRMED; AND REVERSED IN PART AND RENDERED.
KLIEBERT, Chief Judge, dissenting.
I agree with the following portions of the majority opinion: (1) Custody of the children should remain with the mother, and (2) the father's visitations should be supervised by some third party, preferably a professional. However, I respectfully dissent because I believe it is error for us as an intermediate appellate court to confect a detailed visitation plan on the basis of a record which is more than one year old and without the current imput of the parents or the court's appointed professional (Dr. Janzen). This is particularly so here because it is apparent the visitation plan will require supervision and modification from time to time and this Court is not equipped to timely and efficiently administer same. Given the situation here, I believe, in the better interest of the children and their parents, the matter should be remanded to the trial court with instructions to conduct an evidentiary hearing within a specified reasonable time (30 or 60 days) to obtain the parents' imput on the husband's visitation, the professional's imput on the conditions and attitudes of the parents and of the children and, thereafter, with the aid of Dr. Janzen, fashion a detailed plan for the father's visitations within the broad guidelines set by this Court, such as, frequency and place of visitations, with the authority in the trial judge to modify the initial plan to protect the children and meet the desired goal of re-establishing the relationship between the father and his children.
Considering the mother's past history of substance abuse and that the past due support payments arose out of the dispute over the husband's visitation with the children and the mother's allegations of the father's sexual abuse of the children, I agree with the trial judge's conclusion to put the past due support payments in trust. However, I believe these funds should be for the exclusive use of the children's future medical and educational expenses, and the trustees should be the mother and father or a professional financial institution.
In my view the better interest of the children requires a cessation of hostilities between the parties, otherwise this family is headed for a catastrophe.
GRISBAUM, Judge, concurring.
I concur with the majority. However, I disagree with the decree awarding custody and visitation simply because the time lapse in perfecting this appeal to rendering of this decree is in excess of a year. Ergo, I would conclude that the trial court would be in a better posture upon remand to declare the exact boundaries of custody and visitation.
CANNELLA, Judge, concurring.
I concur in the majority opinion, being of the view that the result, with the accompanying decree, is correct. However, in my view, once the majority correctly made the determination that the trial court had used the wrong standard of review (beyond reasonable doubt) concerning the adequacy of the proof of sexual abuse by Mr. Rester, it was incumbent upon this court to make its own determination using the proper standard of proof (by a preponderance of the evidence, La.C.C. art. 133). La.C.C.P. art. 2164. I think the majority errs in avoiding that issue.
After reviewing the record, it is my opinion that Mrs. Gober met her burden of proof. However, I nonetheless concur in the majority opinion because, even with a finding that the sexual abuse was adequately proven, the resulting visitation schedule, set out by the majority, is proper *664 under the facts and circumstances presented here. Accordingly, I concur.