638 So.2d 369 (1994)
Alfred MYERS, et al.
v.
BURGER KING CORPORATION and Muhleisen Properties.
Nos. 92-CA-0400, 93-CA-1626.
Court of Appeal of Louisiana, Fourth Circuit.
May 26, 1994.
Rehearing Denied July 19, 1994.
*373 Robert E. Couhig, Jr., Donald C. Massey, Todd R. Thomas, Adams and Reese, New Orleans, for plaintiffs, appellants.
Stephen N. Elliott, Mickey S. deLaup, Jeffrey K. Warwick, Bernard, Cassisa & Elliott, Metairie, for defendant, appellant.
John C. Combe, Jr., Donna Powe Green, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for defendant, appellee.
Raymond P. Augustin, Jr., Augustin and Laventhal, Metairie, for intervenor, appellant.
Before SCHOTT, C.J., and CIACCIO and ARMSTRONG, JJ.
CIACCIO, Judge.
This is an appeal from three trial court judgments rendered in a personal injury action. We amend one of the judgments of the trial court, and as amended, affirm all three.
On September 16, 1988, plaintiff, Alfred Myers, severely injured his back while in the course and scope of his employment as a construction superintendent for Parkway Construction Company. Parkway had entered into a contract with Burger King Corporation to renovate a Burger King Restaurant in Metairie known as Burger King 1305. On the date of the accident, Myers and other Parkway employees were concluding the renovation work inside the restaurant when the menu board attached to a wall above and behind the main counter fell, crushing plaintiff's back. As a result of the accident, plaintiff has undergone numerous operations, extensive physical therapy and rehabilitation, suffers constant pain, is no longer able to work and will require lifetime medical care.
Myers and his family filed suit against Burger King Corporation and Muhleisen Properties, Inc. In their original petition, plaintiffs alleged that Burger King was negligent and had custody of the defective menu board. They further alleged that Muhleisen was the owner of the building and had custody of the defective menu board wall. Burger King filed a third party demand against Parkway, alleging that Parkway owed it indemnity and that Parkway breached its contract with Burger King for failing to name it as an additional insured on its insurance policy. Parkway in turn filed a cross claim against Muhleisen and Muhleisen's insurer, Traveler's Indemnity Company, for indemnity and contribution. Nationwide Mutual Insurance Company, Parkway's workers compensation insurer, intervened in the suit, seeking to collect the $173,117.60 it had paid plaintiff in workers compensation benefits.
*374 Prior to trial, Burger King and the Myers executed an agreement entitled "Conditional Release and Covenant Not to Execute Judgment", whereby Burger King negotiated with the Myers to limit its maximum exposure at $900,000.00 in the event it was not successful on the indemnification issue. Pursuant to this agreement Muhleisen was released and Burger King paid plaintiffs $622,400.00, in addition to annuities which were purchased on their behalf.
Prior to the conclusion of the trial on the merits, the trial judge ruled that Burger King Corporation was the owner of the building. The matter was then submitted to the jury and the jury returned a verdict in favor of the plaintiffs. The jury concluded that Burger King had custody of the menu board and determined that Parkway was 50% at fault. The jury awarded Myers $140,000.00 in past lost wages; $900,000.00 in future lost wages; $361,000.00 for past, present and future pain and suffering; $99,000.00 in past medical expenses; $500,000.00 in future medical expenses; $75,000.00 for loss of consortium to Mrs. Myers and $50,000.00 to each of the three Myers children for loss of consortium. On February 3, 1993, the trial judge signed a judgment in favor of plaintiffs and against Burger King which incorporated the jury verdict but reduced the award by 50%. On February 10, 1993, Parkway filed a motion for a new trial.
On March 17, 1993, the trial judge rendered judgment, awarding Nationwide Mutual Insurance Company $101,909.63, as a result of assessing Nationwide for a portion of plaintiffs' attorneys' fees and court costs. The trial judge rendered another judgment the same day in favor of Burger King, awarding it full indemnification against Parkway, plus attorneys' fees in the amount of $152,462.00. Parkway filed another motion for new trial regarding this judgment. Both motions were subsequently denied. It is from these judgments that Parkway appeals. Nationwide appeals from the March 17, 1993 judgment in its favor. Plaintiffs appeal from the February 3, 1993 and March 17, 1993 judgments and also answer the appeals of Parkway and Nationwide. Burger King answers the appeals of Parkway and Nationwide, asserting that it is entitled to an increase in attorneys fees and costs for costs incurred in defense of the suit subsequent to trial.
The parties raise the following issues on appeal:
1. Whether the trial judge erred in finding Burger King was the owner of the building;
2. Whether the jury erred in finding that Burger King had custody of the menu board;
3. Whether the jury erred in finding Parkway negligent in causing the accident and assessing 50% of fault to it;
4. Whether the trial court erred in reducing plaintiffs' recovery by the percentage of fault attributed to Parkway, the statutorily immune employer;
5. Whether the jury erred in finding plaintiff free from fault in the accident;
6. Whether the trial court erred in failing to apportion third party fault;
7. Whether plaintiffs' damage award is excessive or inadequate and not supported by the evidence in the record;
8. Whether the trial court erred in failing to allow defendants to disclose to the jury the agreement between Muhleisen and the plaintiffs;
9. Whether the trial court erred in failing to give Parkway a credit for the amounts paid on behalf of Muhleisen to the plaintiffs;
10. Whether the trial court erred in failing to limit Burger King's indemnification from Parkway to $1,000,000.00, as prescribed by the indemnification provision of the contract; and,
11. Whether the trial judge erred in awarding plaintiffs attorneys' fees and costs in the judgment rendered on behalf of the intervenor.
The first issue to be addressed is whether the trial judge erred in determining that Burger King was the owner of the building. Parkway argues that the trial judge failed to apply the legal presumption established by LSA-C.C. art. 491 in determining that Burger King owned the building at 4933 *375 Veterans Boulevard. LSA-C.C. art. 491 provides that a building is presumed to belong to the owner of the ground, unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located. Parkway contends it relied on the presumption created by art. 491 that Muhleisen, the owner of the ground, also owned the building. It argues that plaintiffs and Burger King had to prove through the conveyance records that Burger King was in fact the owner of the building but they failed to do so.
In the instant case the trial judge ruled that art. 491 had no bearing on the question of who was the owner of the building within the purview of art. 2322. We agree.
LSA-C.C. art. 491 regulates the right of third persons purchasing real property or granting a mortgage to presume that any buildings on the ground are the property of the owner of the ground in the absence of any indication to the contrary by an instrument filed in the conveyance records of the parish in which the immovable is located. It protects the purchaser or mortgagee who has relied on the public records doctrine. As noted by the trial court, comment d to art. 491 provides:
This provision does not determine the ownership of the buildings, constructions, standing timber and crops on the land of another. The question whether these things belong to the owner of the ground or to another person is determined in accordance with the rules governing ownership.
The trial judge in rendering his decision cited LSA-R.S. 9:2722 which provides:
Third persons or third parties so protected by and entitled to rely upon the registry laws of Louisiana now in force and effect and as set forth in this chapter are hereby defined to be and to include any third person or third party dealing with any such immovable or immovable property or acquiring real or personal right therein as purchaser, mortgagee, grantee or vendee or servitude or royalty rights, or as lessee in any surface lease or leases or as lessee in any oil, gas or mineral lease and all other third persons or third parties acquiring any real or personal right, privilege or permit relating to or affecting immovable property.
Clearly, under the statute, plaintiffs are not included in the definition of those parties protected by and entitled to rely upon the registry laws of Louisiana.
Plaintiffs introduced into evidence at trial a Ground Lease-Short Form entered into by Muhleisen and Jas. K. Dobbs Co. of New Orleans, Inc., Burger King's predecessor. The agreement was recorded prior to the accident in the conveyance records of Jefferson Parish. The trial judge correctly noted that the ground lease granted by Muhleisen was a notification that only the ground was being leased. The Ground Lease-Long Form provided that the lessee was responsible for any repairs or restoration to the building and for insuring the building. The lease also contained a paragraph providing that any buildings, structures, alterations or improvements made by the tenant shall upon termination of the lease become property of the landlord. Although no witness testified at trial as to when and by whom the Burger King Store 1305 was originally constructed, the evidence reflects that Muhleisen did not construct, repair, maintain, or improve the building located at 4933 Veterans Boulevard.
The question of ownership was a question of law to be decided by the trial court. After reviewing the record we find the trial was correct in determining Burger King was the owner of the building.
Parkway argues on appeal that the jury erred in finding Burger King had custody of the menu board. It contends that even assuming Burger King was the owner of the building Burger King transferred custody of the board to Parkway when the renovation work began. Parkway contends that it was the only party occupying that part of the building where the renovation work was being done and it had exclusive control of the menu board at the time of the accident. According to Parkway, a finding that it had custody of the menu board would render moot all other issues on appeal, as plaintiff's sole recovery would be workers compensation.
*376 LSA-C.C. art. 2317 provides in part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.
This article imposes strict liability based on a person's relationship of custody (garde) to a defective thing which creates an unreasonable risk of injury to others. King v. Louviere, 543 So.2d 1327, 1329 (La.1989). As a general principle, the guardian is in a better position than the innocent victim to detect, evaluate and take steps to eliminate the unreasonable risk of harm arising in a defective thing. Ross v. La Coste de Monterville, 502 So.2d 1026, 1028 (La.1987). Under most circumstances ownership alone establishes the requisite benefit, control and authority to find garde. Doughty v. Insured Lloyds Ins. Co., 576 So.2d 461 (La.1991). An owner who transfers to another possession of his thing containing a structural defect continues to have garde or custody of its structure and a duty to protect others from harm caused by the defect. Ross v. La Coste de Monterville, supra at 1029. An owner may be responsible for damages caused by the structural defect of his thing even when the injury occurs after the owner has lost physical custody of the thing. Id.
The evidence in the record indicates that Burger King had complete custody and control over the building for several years prior to the renovations. After the parties entered into the contract and the renovation work commenced, Burger King transferred custody of the building to Parkway only to the extent that Parkway employees had access to the building to do the work. Although the restaurant was closed for business during some of the work, Burger King employees had access to the building and remained on the premises in the back of the building. Plaintiff testified at trial that Burger King employees were on the premises while the renovation work was progressing. According to him, he could not recall whether he had a set of keys to the premises but he did remember that a Burger King employee would let the construction workers in and out of the building when the work was being done at night.
Under these circumstances, it is clear that Burger King had not surrendered custody of the building to Parkway. Accordingly, we find no error in the jury's finding that Burger King had custody or garde over the menu board.
We also find no error in the jury's finding that the manner in which the menu board was hung constituted ruin or a vice in the construction of the building. The record shows that the menu board was attached to the wall by nails instead of bolts. This was an unsafe and improper manner of suspending this heavy object. The board fell when the nails came loose as a result of various activities undertaken during the renovations. Under the circumstances, we find no error in the jury's findings that the manner in which the board was hung presented an unreasonable risk of harm and was a proximate cause of plaintiff's injuries.
The third and fourth issues are raised by plaintiffs in this appeal. Plaintiffs argue that the jury erred in finding Parkway negligent and allocating 50% of the fault to it. Consequently, plaintiffs also argue the trial court erred in reducing the jury award in their favor by 50%, the amount of fault attributed to Parkway.
As to the negligence of Parkway, there is ample evidence in the record to support the jury's finding. The video taped deposition of Jack Meyer, corporate level director of architecture for Burger King, was introduced at trial. Meyer testified that according to the BK-22 design, the specifications for that particular restaurant, there were two header beams which reinforced the wall to which the menu board was attached. In addition, Steve Betts, the architect who drew the plans, testified that Parkway was to cut a pass through under the menu board. According to Meyer, a cut through the header beams would compromise the structural integrity of the wall and cause the menu board to fall. The evidence in the record also indicates that Parkway employees during the course of the renovation negligently cut through the header beams without *377 making any provision for their support, contributing to the chain of events that caused the menu board to fall. Under these circumstances, we cannot say the jury's finding that Parkway was negligent and 50% at fault in causing the accident was clearly wrong.
We now consider whether the trial judge erred in reducing plaintiffs' jury award by the percentage of fault attributed to Parkway. In support of their argument plaintiffs rely on the case of Gauthier v. O'Brien, 618 So.2d 825 (La.1993).
In Gauthier, the plaintiff was injured while riding with her employer in a vehicle that collided with a tractor, driven by a third party. Gauthier filed a motion in limine, seeking to preclude any assessment of fault on the employer. Gauthier was relying on the case of Guidry v. Frank Guidry Oil Co., 579 So.2d 947 (La.1991), wherein the Court held that LSA-C.C. art. 2324, prior to the 1987 amendment, provided that a jury should not assess fault on a statutorily immune employer. The trial court granted Gauthier's motion and the appellate court affirmed. The Supreme Court granted writs to determine whether an employer's fault should be assessed by the jury. The Court overruled Guidry insofar as it precluded the assessment of employer fault. The Court concluded that the amendment to LSA-C.C. art. 2324(B) contemplated the assessment of fault of a statutorily immune party. In rendering its decision the Court stated:
While employer fault must be quantified by a jury to enable the jury to reach a fairer determination of the relative fault of all blame-worthy parties, the judge after the jury has determined the verdict, should disregard the proportion of fault assessed to the employer and reallot the proportionate fault of all other blameworthy parties.
Clearly, considering the Supreme Court's decision in Gauthier, we find the trial court properly instructed the jury to assess fault on Parkway; however, the court erred in reducing plaintiffs' recovery by the percentage of fault attributed to Parkway. As Parkway is statutorily immune, under the Gauthier rationale, the 50% of fault should be allocated to the remaining blameworthy party, in this case Burger King. Hence, 100% of the fault is assessed against Burger King.
In the fifth assignment of error, Parkway argues that the trial court erred in finding plaintiff free from fault. It contends that plaintiff, as supervisor on the job, controlled all of Parkway's operations on the job site.
Plaintiff testified that he was the supervisor on the job and had access to all the plans and specifications. According to him, the work conformed exactly to the specifications provided by Burger King and there is no evidence in the record to the contrary. Plaintiff testified that the plans called for cutting through a wall to create a partition. He testified that two other Parkway employees, Darryl Williams and Sam Newton, made the cut and although he did not actually see them cut through the wall or inspect it afterward, he was aware that it was done. According to plaintiff, the wall was cut and the partition was completed several days prior to the menu board's falling.
On the morning of the accident, plaintiff and other Parkway employees were completing the final details of the work, as Burger King was to open for business that day. Plaintiff was behind the main counter laying floor tiles and Williams was on a ladder at the end of the menu board placing oak trim on the wall around the board when the board fell. According to him, he had remodeled several Burger King restaurants, was familiar with the construction of the menu boards and had no reason to suspect that the menu board in question would fall.
As there is no evidence that plaintiff was negligent in the performance of his duties or that he knew or should have known that the other Parkway employees negligently cut the header beams when they made the partition or that he knew or should have known of any defect in the original construction of the menu board, we cannot say the jury was clearly wrong in its finding that plaintiff was not negligent.
The sixth assignment of error to be addressed is whether the trial court erred in failing to allow the allocation of third party fault against the party who built the original *378 menu board. Over the objection of Parkway, the trial judge refused to allow jury interrogatories which provided for the assessment of fault against third parties. Parkway contends that it should have been allowed to argue and submit to the jury that the party who constructed the original menu board could be found at fault.
Third party fault is a defense to a strict liability claim pursuant to LSA-C.C. arts. 2317 and 2322. In Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1978) the Court stated:
The fault of a `third person' which exonerates a person from his own obligation imparting strict liability as imposed by Articles 2317, 2321, and 2322 is that which is the sole cause of the damage, of the nature of an irresistible and unforeseeable occurrence i.e., where the damage resulting has no causal relationship whatsoever to the fault of the owner in failing to keep his building in repair, and where the `third person' is a stranger rather than a person acting with the consent of the owner in the performance of the owner's non-delegable duty to keep his building in repair.
Clearly, unless the fault of the third party was the sole cause of plaintiff's harm, the third party fault would not absolve Burger King of its liability under arts. 2317 and 2322. In the instant case, there was no evidence offered at trial as to who built the curtain wall or when it was erected. In light of this, we find the trial court properly refused to request the jury to allocate fault to a third party against whom no evidence was offered.
We now consider the quantum issue. Plaintiffs argue on appeal that the jury's award for general damages and future medical expenses is inadequate. Parkway, on the other hand, contends that the award for future medical expenses and loss of future earning capacity is excessive. It also argues that the jury erred in awarding damages for loss of consortium to Lori Myers and the three Myers children.
Before a reviewing court can disturb an award by a trial court, the record must clearly reveal that the trier of fact abused its discretion in making its award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's much discretion. It is only after an articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review for articulated reason be considered excessive or insufficient. Reck v. Stevens, 373 So.2d 498 (La.1979).
Dr. John Cazale, an orthopaedic surgeon, testified plaintiff was referred to him immediately following the accident by Dr. Richard Corales, a neurosurgeon at East Jefferson General Hospital who initially saw plaintiff in the hospital's emergency room. Dr. Cazale testified that the initial x-rays indicated plaintiff had fractured the first lumbar vertebra. Drs. Cazale and Corales operated on plaintiff, performing a multi-level disc fusion and inserting Luque rods to stabilize the spinal cord. According to Dr. Cazale, plaintiff suffered extreme pain and had to undergo extensive rehabilitation and physical therapy.
After plaintiff returned to his home state of Texas, he was treated by Dr. Frank Swords. Dr. Swords' videotaped deposition was introduced at trial. He testified that plaintiff would suffer with arthritis and disc degeneration for the remainder of his life. Due to the severity of his injuries, Dr. Swords referred plaintiff to Dr. Richard Guyer of the Texas Back Institute. At the institute, plaintiff underwent surgery with Dr. Guyer removing the rods from the back. As part of the rehabilitation process, Dr. Jerry Holubec, a pain specialist at the institute, treated plaintiff regularly. In his videotaped deposition, Dr. Holubec stated that plaintiff, more probably than not, would continue to suffer back and leg pain and be unable to do any physical labor. He opined that plaintiff would one day be confined to a wheelchair or bedridden as the result of his back injury.
In light of the testimony and other evidence in the record, we cannot say the jury abused its discretion in awarding Myers $361,000.00 in general damages.
*379 As to the award for future medical expenses, both Parkway and plaintiffs dispute the $500,000.00 award. Based on the testimony of Drs. Holubec and Guyer it is evident that Myers will require future, long term medical care. Further, Dr. Robert Voogt, a rehabilitation expert, testified that Myers would require home health care and psychiatric counseling in addition to regular medical care and pain management treatments. He estimated that the additional home health care would cost approximately $16,114.00 per year while two years of pain management and counseling would cost $66,525.00. Plaintiffs also offered the testimony of Dr. Seymour Goodman, an economist. Based on the figures provided by Dr. Voogt, Dr. Goodman estimated that plaintiffs future medical expenses would be at least $688,581.00.
Although Dr. Goodman's uncontradicted estimate is more than the $500,000.00 amount awarded by the jury, we cannot say the jury abused its much discretion in awarding plaintiff future medical expenses.
Parkway also contests the award of $900,000.00 to plaintiff for the loss of future earning capacity.
To prove an award for impaired earning capacity or future loss of wages, plaintiff must present medical evidence which at least indicates that a residual disability causally related to the accident might exist. Naman v. Schmidt, 541 So.2d 265 (La.App. 4th Cir.1989). Awards for lost future income are inherently speculative and intrinsically insusceptible of being calculated with mathematical certainty. Smith v. Two R Drilling Co., Inc., 606 So.2d 804, 811 (La.App. 4th Cir.1992), writ denied 607 So.2d 560 (La. 1992). Factors to be considered in determining a proper award for lost future income are the plaintiff's physical condition before the injury, the plaintiff's past work history and work consistency, the amount the plaintiff probably would have earned absent the injury complained of, and the probability that the plaintiff would have continued to earn wages over the remainder of his working life. Id. at 811.
The record in the instant case is replete with medical evidence that plaintiff will never be able to do the physical labor required in the construction industry. At the time of the accident, plaintiff was earning over $30,000.00 per year working as a superintendent for Parkway. He was 28 years old, in excellent health, had a good employment record and continued to have steady wage increases. Dr. Goodman testified that Myers loss of future earning capacity was approximately $949,000.00. This figure, according to Dr. Goodman, was based on Myers earning over $30,000.00 per year with 27.9 years of work life remaining. Defendants offered no evidence to dispute Dr. Goodman's testimony. Absent evidence to the contrary, we cannot say the $900,000.00 award to plaintiff for loss of future earning capacity was an abuse of the jury's discretion.
The jury also awarded Mrs. Myers $75,000.00 and each of the three Myers children $50,000.00 for loss of consortium which Parkway appeals. Plaintiff testified that prior to the accident he and his wife had a very close, loving relationship even though he often worked out of town. He stated that his pain and physical condition as a result of the accident put severe stress on their marriage and he and Mrs. Myers were no longer able to live together. Plaintiff further testified that he was frustrated following the accident and that he constantly yelled at his wife and the children even though they did not deserve such treatment. Like Myers, Mrs. Myers testified that she and her husband were very close. She testified that they enjoyed country western dancing and water skiing along with activities they did with the children. Mrs. Myers stated that after her husband's injury, physical intimacy between them was very rare, awkward and particularly painful for Mr. Myers.
According to both Mr. and Mrs. Myers, the accident greatly affected the children. Roderick, the oldest child, became withdrawn, depressed and no longer did well in school. Because Myers could no longer coach Roderick in T-ball or attend Taekwando classes with him, he refused to participate in any activities that he enjoyed prior to his father's injury. As to the two younger children, *380 Myers was no longer able to carry them or engage in any type of recreational activities with them. In light of the overwhelming evidence that the Myers' marriage and the childrens' lives suffered greatly as a result of plaintiff's injury, we cannot say the jury abused its discretion in awarding Mrs. Myers $75,000.00 and each of the three Myers children $50,000.00 for loss of consortium.
In the eighth assignment of error, Parkway contends that the trial judge erred in refusing to allow defendants to disclose to the jury the agreement between Muhleisen Properties and plaintiffs. Parkway asserts that the compromise or settlement was admissible under LSA-C.E. art. 408 to prove the non-adverse relationship between the settling defendant, Muhleisen Properties, and the plaintiffs.
The evidence in the record indicates that Parkway had entered into an contract with Burger King to insure and indemnify Burger King for any claims arising out of the renovation contract between the parties. However, Parkway and its insurer refused to honor the contract or enter into any settlement negotiations after plaintiff filed his suit. When the matter was originally set for trial, plaintiffs' claims and Burger King's claim for indemnification were to be tried simultaneously. However, prior to trial the trial judge severed Burger King's third party demand for indemnification, ruling that only plaintiffs' main demand would be tried. At that time Burger King elected to negotiate with the Myers to limit its maximum exposure to $900,000.00 in the event it was not successful on its indemnification claim and the parties executed the Conditional Release and Covenant Not to Execute Judgment.
In accordance with the agreement, Burger King advanced $900,000.00 in cash and annuities to the plaintiffs which was to constitute either a full settlement of the claim or an advance on any future judgment rendered against Burger King, depending on the resolution of the indemnification claim. The written agreement was provided to the court as well as counsel for all parties.
Parkway requested that the Conditional Release be disclosed to the jury in order that the jury the would fully understand the relationship between the parties. The trial judge denied the request. The trial judge was the trier of fact with regard to the ownership issue and was fully aware of the agreement entered into between Burger King and the Myers. Under these circumstances, we do not find the trial judge abused his discretion in refusing to disclose to the jury the terms of the Conditional Release.
Parkway further argues on appeal that the trial court erred in failing to give Parkway a credit for the amounts paid on behalf of Muhleisen to the plaintiffs. Parkway asserts that the Conditional Release entered into was a settlement agreement between the plaintiffs and Muhleisen.
Although as a condition of the agreement Muhleisen was released, Muhleisen was not a party to the agreement nor did it pay any sums in connection with the agreement. Under the terms of the agreement, Burger King paid the $900,000.00 to the plaintiffs. Because Parkway's obligation to indemnify Burger King arises as a result of the judgment based on Parkway's breach of contract, we do not find the trial judge abused his discretion in not giving Parkway a credit for the $900,000.00 tendered by Burger King under the Conditional Release.
As the tenth assignment of error Parkway contends that the trial court erred in failing to limit Burger King's indemnification from Parkway to $1,000,000.00 as prescribed by the indemnification provision of the contract.
The indemnification contract between Burger King and Parkway provides in pertinent part:
INDEMNIFICATION: The contractor shall indemnify, defend and save and hold harmless the Owner from those claims set forth in the above paragraph captioned Insurance, including reasonable attorneys' fees.
INSURANCE: The contractor shall maintain insurance to protect the Owner and Himself from claims which may arise from the Contractor's operations, whether such operations be by himself, any sub-contractor, anyone directly or indirectly employed *381 by any of them, or by whose acts they may be liable.
This insurance shall be written for not less than limits of liability required by law, or $1,000,000 aggregate (single limit applicable to bodily injury and property damages combined) whichever is greater.
Burger King Corporation, its subsidiaries, affiliated companies and parent company shall be named as additional insureds under this policy.
In the present case, Parkway argues that as the indemnity clause makes reference to the insurance clause, the indemnity clause must limit itself to the minimum insurance provided, or $1,000,000. We disagree.
In Klepac v. Champlin Petroleum Co., 842 F.2d 746, reh'g denied, 844 F.2d 788 (5th Cir.1988), the court considered whether indemnity obligations are limited to the dollar amount of obligations expressed in insurance clauses. Like the Burger KingParkway contract, the contract in Klepac contained an insurance clause which stated both a minimum dollar amount of CGL coverage to be provided and referred back to the terms set forth in greater detail in the indemnity clause. Here, the court held that the insurance obligation and the duty to indemnify are separate and that the amount of indemnity owed is not limited to the lesser amount of liability required to be covered by comprehensive general liability policies. In the present case, the indemnity clause does not limit itself to the minimum amount of insurance coverage provided in the insurance clause. It clearly states that the indemnity is required for all of the claims that were previously listed in the insurance clause. Parkway was free to and did maintain higher insurance limits to protect itself against its indemnity requirements. In light of this and the jurisprudence which provides that the indemnity and insurance clauses are to be read separately, we find the trial court did not err in holding that the indemnity provision of the contract between Burger King and Parkway required Parkway to fully indemnify Burger King for all damages cast against Burger King.
In the last assignment of error, Nationwide Mutual Insurance Company argues that the trial court erred in awarding plaintiffs attorneys' fees and costs in the judgment rendered in its favor on March 17, 1993, citing LSA-R.S. 23:1102 and R.S. 23:1103.
Under the penalty provisions of LSA-R.S. 23:1102 and 23:1103, a plaintiff who settles without seeking approval of a compromise forfeits his right to future compensation while the third party defendant who settles without first seeking written approval is liable to repay the employer and the insurer the full amount of the compensation lien. In the instant case, under the Conditional Release agreement between plaintiffs and Burger King, there was no compromise that would have required approval by Nationwide. The penalty provisions of LSA-R.S. 23:1102 and 23:1103 are therefore not applicable. Moreover, as a condition of the agreement, Burger King escrowed more than $158,000.00, the amount of the workers' compensation intervention at the time of the execution of the Conditional Release, to protect Nationwide's interest. Clearly, the Conditional Release was neither against Nationwide's interest nor did it prejudice its right to collect the monies it had expended in workers' compensation benefits to the plaintiff. Under these circumstances, we find the trial judge did not err in awarding plaintiffs attorneys' fees of $57,705.86 and costs of $13,502.11 in the judgment rendered in favor of Nationwide.
Plaintiffs, however, assert that the trial judge should have awarded them attorneys' fees of $69,247.04 or 40% of the total compensation awarded Nationwide based on a contingency fee contract that plaintiffs had entered into with their attorneys. Although the amount awarded in attorneys' fee is equal to only one-third of the compensation lien of $173,117.60, we cannot say that the trial judge abused his discretion in determining the award.
Lastly, Burger King requests that, in addition to affirming the trial court's judgment awarding it $152,462.00 for legal expenses incurred in defending the suit, we award it additional fees and costs of $30,501.81 for the amounts it has expended in defending the suit on appeal. Although we *382 find that Burger King is entitled to additional attorneys' fees for the appeal, based on the record before us we unable to determine the amount of the additional attorneys' fees. We therefore remand the matter to the trial court to fix the amount of Burger King's claim for additional attorneys' fees.
Accordingly, for the reasons assigned, we amend the judgment of the trial court dated February 3, 1993, to reallocate that portion of fault, 50%, attributed to Parkway, the statutorily immune employer, to Burger King and award plaintiffs the full amount of damages in accordance with the jury's verdict.
The judgment of February 3, 1993 is amended to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein favor of Alfred Myers and against Burger King Corporation in the full and true sum of TWO MILLION AND 00/100 ($2,000,000.00) DOLLARS, with legal interest thereon from date of judicial demand until paid, and for all costs of these proceedings, both at trial and on appeal.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Lori Myers and against Burger King Corporation in the full and true sum of SEVENTY FIVE THOUSAND AND 00/100 ($75,000.00) DOLLARS, with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Alfred Myers and Lori Myers on behalf of their minor child, Roderick Myers, and against Burger King Corporation in the full and true sum of FIFTY THOUSAND AND 00/100 ($50,000.00) DOLLARS, with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Alfred Myers and Lori Myers on behalf of their minor child, Tabetha Myers, and against Burger King Corporation in the full and true sum of FIFTY THOUSAND AND 00/100 ($50,000.00) DOLLARS, with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Alfred Myers and Lori Myers on behalf of their minor child, Stephen Lee Myers, and against Burger King Corporation in the full and true sum of FIFTY THOUSAND AND 00/100 ($50,000.00) DOLLARS, with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the judgments of March 17, 1993:
(1) in favor of Nationwide Mutual Insurance Company and against Alfred Myers for reimbursement of workers' compensation payments, and,
(2) in favor of Burger King Corporation and against Parkway Construction Company for full indemnification and attorneys' fees, are hereby AFFIRMED.
The matter is remanded to the trial court for a hearing to fix the amount owed Burger King for additional attorneys' fees in connection with this appeal.
AMENDED AND, AS AMENDED, AFFIRMED.
SCHOTT, C.J., concurs in the result.
SCHOTT, Chief Judge, concurring in result:
My reading of the record has convinced me that the jury's finding that Parkway was negligent is clearly wrong. The evidence shows that this menu board fell because it was attached to the wall with nails instead of being bolted to the wall. Neither the cutting of the pass through nor the vibrations from the Parkway employee's pneumatic hammer would have caused it to fall if it had been properly attached to the wall. Parkway had no duty to take the menu board apart and thereby discover this defect before it began its work under the contract. This is a classic case of a defective thing which causes damage making the owner liable under C.C. art. 2317.
As to whether Burger King or Parkway is the party liable under art. 2317 it would be absurd to hold that Parkway was the custodian. *383 If I hire a plumber to repair my kitchen sink and while he is working on the pipes the ceiling falls on a third party watching him work it could hardly be said that the plumber is the custodian liable under art. 2317.
In the present case there was a defect of long standing before Parkway entered the premises. Like a time bomb set to go off this heavy sign would fall sooner or later when these nails became loose enough. The same thing can occur in one's home if a mirror or picture is hung on the wrong size nail or a nail instead of a bolt. One day it will fall off the wall. Parkway did not take custody of this defective thing. It had the misfortune of doing the kind of work around it which would hasten its failure. Burger King retained custody of the thing and is liable under art. 2317.
While Burger King is solely liable, the indemnity agreement makes Parkway wholly liable to Burger King so I reach the same result as my colleagues.
On the issue of loss of future earnings plaintiff's economist testified that the discounted present value of plaintiff's future earnings, considering that his $30,000 salary would increase with inflation over the 28 years of his work-life expectancy, was $949,000. Thus testimony provided ample support for the jury's award of $900,000.
In all other respects I agree with the majority opinion.