846 So.2d 803 (2003)
Thomas Joseph CARRIER, Jr.
v.
LOUISIANA PIGMENT COMPANY, LP, et al.
No. 02-829.
Court of Appeal of Louisiana, Third Circuit.
February 19, 2003.
*805 Clayton Arthur Larsh Davis, Lundy & Davis, Lake Charles, LA, for Louisiana Pigment Company, LP.
Ralph Shelton Hubbard III, Joseph Pierre Guichet, Lugenbuhl, Wheaton, Peck, Rankin & Hubbard, New Orleans, LA, for Travelers Indemnity Company, Louisiana Pigment Company, LP.
Robert Irwin Siegel, Hoffman, Siegel, Seydel, Bienvenu, Centola & Cordes (APLC), New Orleans, LA, for National Union Fire Ins. Co.
Randall Kurt Theunissen, Allen & Gooch, Lafayette, LA, for Miller Environmental Services, Inc.
Robert E. Landry, Scofield, Bergstedt, Lake Charles, LA, for Louisiana Pigment Company, LP.
Henry Harvey LeBas, Robert Mark Martina, Lafayette, LA, for Colonial Casualty Ins. Co.
Billy Edward Loftin, Jr., Gregory Paul Allen Marceaux, Marceaux & Loftin, Lake Charles, LA, for Thomas Joseph Carrier, Jr.
Court composed of ULYSSES GENE THIBODEAUX, MICHAEL G. SULLIVAN and BILLY H. EZELL, Judges.
THIBODEAUX, Judge.
In this suit involving the interpretation of an indemnity agreement, National Union Insurance Company ("National Union") and Miller Environmental Services, Inc. ("Miller") appeal the trial court's partial final judgment, which granted Louisiana Pigment Company, L.P. ("Louisiana Pigment") and Travelers Indemnity Company's ("Travelers") motions for summary judgment on their third-party demands against Miller and National Union. Louisiana Pigment and Travelers appeal the trial court's denial of summary judgment on the issue whether Thomas Carrier's injuries were caused by the sole negligence or sole fault of Louisiana Pigment.
We affirm. Summary judgments are reviewed de novo. "In this case, there are no factual matters in dispute. Rather, the case involves the interpretation of an insurance policy, a question of law, and we have authority to construe the provisions of the policy in order to resolve questions of coverage." Thompson v. McKnight, 01-0190, p. 2 (La.App. 3 Cir. 6/6/01); 787 So.2d 620, 621, writ denied, 01-2882 (La.1/25/02); 807 So.2d 249. We find that the trial court properly interpreted the provisions of the insurance policies and indemnity agreements.

I.

ISSUES

Issues of National Union and Miller, as Third-Party Defendants-Appellants
We have determined that the following issues encompass both third-party defendants-appellants' assignments of error on appeal:
(1) whether the trial court erred in determining that Louisiana Pigment and Travelers can recover indemnity from National Union, though the Reservation of Rights Agreement does not specifically *806 apportion each defendant's liability in the settlement?
(2) whether the trial court erred in finding that National Union's coverage applies before Travelers?
(3) whether the trial court erred in determining that the "sickness, illness, or disease" exception was inapplicable?
(4) whether the trial court erred in determining that the Louisiana Pigment/Miller contract caps National Union's liability at $3 million?
(5) whether the trial court erred in determining that Louisiana Pigment can recover attorney fees and costs from Miller and National Union?
Issues of Travelers, as Third-Party Defendant Cross-Appellant, and Louisiana Pigment, as Third Party Plaintiff-Appellee/Cross-Appellant
Louisiana Pigment and its insurer, Travelers, present the following assignments of error for review:
(1) whether a company identified as an additional insured on an insurance policy is negated of its status as an additional insured if the trier of fact finds that the services contract's indemnity provision is inapplicable?
(2) whether the trial court erred in finding that reasonable minds could differ on the issue of whether Carrier's injuries resulted from the sole negligence or fault of Louisiana Pigment?
(3) whether an insurer is entitled to all costs and attorney fees when its insured is entitled to all costs and attorney fees based on legal and contractual subrogation?

II.

FACTS
Thomas Carrier, an employee of Miller, filed suit for bodily injury sustained while performing work on behalf of Miller at Louisiana Pigment in Westlake, Louisiana. Using a high pressure water hose to clean piping, Mr. Carrier came in contact with residual titanium tetrachloride. The water in combination with the titanium tetrachloride produced toxic fumes that burned Mr. Carrier's skin and eyes and caused him to suffer a lung injury.
In April 1998, Miller and Louisiana Pigment negotiated a contract whereby Miller's employees would perform certain work at Louisiana Pigment. The following provisions of the Master Contract for Services entered into by and between Miller and Louisiana Pigment are provided below. Many of the issues raised by both appellants and appellee rest on the interpretation and application of these provisions.
7. PERSONAL INJURIES AND PROPERTY LOSS
Contractor [Miller] agrees to indemnify, defend and hold harmless Louisiana Pigment,... from and against all claims, causes of action, losses, damages, suits and liability of every kind, including all expenses of litigation, court costs, and attorney's fees for damage to any property or for injuries, sickness or death of any person (including but not limited to employees of Contractor or its subcontractors) caused by, arising out of or related, directly or indirectly, to any work or operations performed by Contractor or any of its subcontractors of any tier (or any other person or entity performing services for Contractor) under or by reason of this Contract....
Contractor's obligation to defend, hold harmless and indemnify an Indemnitee shall apply regardless of whether or not any such damage, injury, sickness or death is contributed to by the negligence or fault of an Indemnitee. Under the *807 provisions of this indemnity Contractor is agreeing to indemnify each Indemnitee from the Indemnitee's joint or contributory negligence or fault, but this indemnity shall not apply to any such damage, injury, sickness or death which was caused by the sole negligence or sole fault of an Indemnitee and which was not caused in part by the negligence or fault of Contractor or any of its subcontractors of any tier (or any other person or entity performing services for Contractor hereunder) or any of their employees. Furthermore, this indemnity does not include indemnification against claims for sickness, illness, or disease cause or alleged to have been caused by Contractor's or its subcontractor's employees exposure to any substance or process utilized by any Indemnitee at or near the site of Contractor's work.
Contractor will obtain and continue in force, during the term of this Agreement, all insurance specified below....
8. INSURANCE REQUIREMENTS
The insurance to be obtained and continued in force by Contractor is the following:...
D. Comprehensive General Liability (CGL) insurance with Bodily Injury limits of $1,000,000 each occurrence, and Property damage limits of $1,000,000 each occurrence ...
Excess Liability insurance over and above that specified in.... (D) above in amounts of coverage requested by Louisiana Pigment is to be provided in amount of $3,000,000.
To the extent of Contractor's indemnity obligation under this Article X, the policies required under ... (D) above shall be endorsed to name as additional insured Louisiana Pigment, .... and shall be endorsed to provide that the coverages provided in said policies shall be primarily and non-contributory to any other insurance carried by Louisiana Pigment, named as additional insured except in their sole negligence.
All policies shall contain a waiver of subrogation in favor of the Louisiana Pigment and its insurers. Louisiana Pigment is waived, except in their sole negligence.
In compliance with provision 7(D), Miller obtained CGL insurance in the amount of $1 million and excess liability coverage in the amount of $5 million. Its excess liability coverage exceeded what was required under the agreement.
After Mr. Carrier filed suit, Louisiana Pigment demanded defense and indemnity from Miller and its CGL insurer, United Capitol Insurance ("United Capitol"). United Capitol accepted Louisiana Pigment's defense; however, it reserved its rights to pursue claims against Louisiana Pigment based on the sole negligence exception in the Louisiana Pigment/Miller contract. Additionally, Louisiana Pigment filed a third-party demand against Miller's commercial umbrella insurer, National Union; however, it asserted no claims against Miller at that time. According to Louisiana Pigment, National Union failed to follow the example of United Capitol by providing defense and indemnity in Carrier's lawsuit. In its third-party demand, Louisiana Pigment sought indemnification from National Union based on the Louisiana Pigment/Miller contract, covering claims brought by Miller's employees against Louisiana Pigment and to name Louisiana Pigment as an additional insured under Miller's policies of insurance. Also, Louisiana Pigment asserted that Miller's insurance was to apply before Louisiana Pigment's insurance pursuant to the Master Contract for Services.
In January 2001, all parties to the litigation participated in a mediation. Defendants *808 agreed to pay $4,500,000 to Mr. Carrier for his injuries. Each defendant paid the following amount in the settlement:

United Capitol $1 million
National Union $1,750,000
Travelers $1,500,000
La. Pigment $ 250,000
 __________
 Total $4,500,000

As part of the settlement agreement, the defendants entered into a Reservation of Rights Agreement, which permitted Louisiana Pigment, its insurer, Travelers, National Union, which had issued a commercial umbrella policy to Miller for $5 million, and United Capitol to seek all rights and claims reserved against each other.
After settlement, Louisiana Pigment also filed a third-party demand against Miller based on the same allegations made against National Union. According to Louisiana Pigment, Miller did not name Louisiana Pigment as an additional insured pursuant to the contract. As a result, Miller's insurance was to apply before Louisiana Pigment's insurance. Since National Union refused to pay first, Louisiana Pigment asserted that this was a breach of the indemnity obligation.
On May 23, 2001, Louisiana Pigment and Travelers filed a motion for summary judgment on its third-party demand against National Union and Miller. On September 4, 2001, National Union filed an opposition to the motion for summary judgment. On April 8, 2002, the trial court entered a partial final judgment, granting Louisiana Pigment and Traveler's motions for summary judgment on all issues except whether Louisiana Pigment was solely negligent for the injuries of Mr. Carrier. If Louisiana Pigment were not found solely negligent, then Miller would owe indemnity to Louisiana Pigment in the amount of $250,000 and to Travelers in the amount of $1,500,000. Also, National Union would be obligated to pay attorney fees and costs pursuant to the Master Contract for Services. However, if Louisiana Pigment were found solely negligent, then Miller and National Union would not be obligated to provide defense and indemnity to Louisiana Pigment, and Louisiana Pigment would not qualify as an additional insured. Additionally, the trial court found that National Union's pollution exclusion clause was inapplicable and that National Union's coverage applies prior to Travelers' coverage. Further, Miller owed indemnity to Louisiana Pigment for attorney fees and costs paid in Mr. Carrier's claim and that National Union owed $5 million in coverage pursuant to its insurance policy.
National Union and Miller appeal the trial court's partial final judgment. Subsequently, Louisiana Pigment and Travelers filed a devolutive appeal as to the court's denial of summary judgment on the issue of whether Mr. Carrier's injuries were the sole fault of Louisiana Pigment.

III.

LAW AND DISCUSSION
A. National Union/Miller's Appeal

Apportionment of Liability and Right to Recovery
National Union asserts that Louisiana Pigment and Travelers cannot recover indemnity or contribution from Miller and National Union because the Reservation of Rights Agreement does not specifically apportion what part of the settlement is representative of the payments made on behalf of Miller/National Union. In addition, National Union asserts that the Reservation of Rights Agreement permits only a right to assert claims, not a right of recovery. We disagree.
The Reservation of Rights Agreement was established as part of the settlement *809 in Mr. Carrier's lawsuit. Each party to the settlement was entitled to reserve rights to assert claims against the other parties in spite of their participation in the settlement. Participation in the settlement was not an express admission of fault. The relevant provisions of the Reservation of Rights Agreement as to this issue are as follows (emphasis added):
D. Except as otherwise expressly provided herein, Louisiana Pigment and Travelers specifically reserve all rights and claims against [Miller] and its insurers, including but not limited to [National Union]. This reservation of rights and claims includes but is not limited to those in the third-party demand Louisiana Pigment against National Union. Except as otherwise expressly provided herein, National Union specifically reserves all rights and claims to dispute the claims asserted in the third-party demand, assert any and all defenses, and make claims against Louisiana Pigment and Travelers.
E. Nothing contained in this Agreement or in any document exchanged by the Parties in the negotiation or furtherance of this Agreement, including but not limited to the funding of the settlement, shall affect, and Louisiana Pigment and Travelers expressly retain and reserve, all rights and interest in and to the claims, causes of action and proceeds of any and all indemnity agreements that may apply to the costs and all sums paid or incurred by Louisiana Pigment and Travelers associated with this litigation and settlement, including without limitation all claims for indemnity, costs of defense, attorney's fees, interest, bad faith claims, statutory penalties, costs and all sums paid in settlement of the claims of the plaintiffs. Nothing shall affect and [Miller] and National Union reserve any and all defenses to these claims.
After review of these provisions, we find that Louisiana Pigment and Travelers reserved more than their rights to assert claims, but additionally, their right to recovery. Clearly, their rights to "claims, causes of action and proceeds of any and all indemnity agreements that may apply" encompasses a right to recovery. We find that National Union fails to provide support for its argument, and that its position is without merit.
Additionally, National Union unpersuasively contends that the Reservation of Rights Agreement must apportion specifically what part of the settlement is representative of payments made on behalf of Miller/National Union by Louisiana Pigment/Travelers. National Union bases its argument on the factors presented in Elmwood Plantation, Inc. v. Ruud Water Heater Division, 815 F.2d 1016 (5th Cir. 1987). We agree with the trial court that Elmwood is inapplicable in this case.
Elmwood does not involve a dispute between a contractual indemnitee and an indemnitor; rather, it involves a dispute between a primary and an excess insurer. Additionally, each party in Elmwood in their consent order designated "the sum each insurer agreed to contribute" in the settlement. Id. at 1018. In this case, Louisiana Pigment and Travelers were not obligated to pay damages to Mr. Carrier pursuant to the indemnity agreement. Miller agreed to pay damages for injuries to its employees who performed work at Louisiana Pigment and later sued Louisiana Pigment as a result of a work-related injury. As a result, if Louisiana Pigment was not expected to pay damages based on the indemnity agreement, then there is no need to specify what amount Louisiana Pigment or Travelers paid for National Union, so that it might recover those *810 amounts pursuant to the indemnity agreement. Moreover, we find no merit in National Union's claim that the Reservation of Rights Agreement requires specific apportionment of liability. We affirm the trial court's judgment on this issue.

National Union's Liability
National Union asserts that it was required to contribute to the Carrier settlement only after Travelers had exhausted its policy limits. We disagree.
As stated above, Miller agreed to pay damages for its employees injured while working at Louisiana Pigment who subsequently filed suit against Louisiana Pigment. Miller's insurers are United Capitol and National Union. United Capitol accepted defense and indemnity once Mr. Carrier filed his suit against Louisiana Pigment; however, National Union refused to follow suit. Based on the indemnity agreement, Travelers, as insurer for Louisiana Pigment, cannot be required to pay damages prior to United Capitol nor National Union. National Union's argument that Travelers' coverage precedes its coverage is unfounded.
In Spell v. N.L. Industries, 618 So.2d 17 (La.App. 3 Cir.), writ denied, 624 So.2d 1224 (La.1993), contractors entered into reciprocal indemnity agreements requiring each contractor to provide insurance coverage for injuries to their employees. Additionally, Union Oil required that Two "R" Drilling's insurance policies name Union Oil as an additional insured. As a result, "any obligation that Union contractually ha[d] to defend and/or indemnify Two "R" should be furnished by Two "R" `s insurance carrier." Id. at 18. Union Oil argued that if Two "R" Drilling did not name Union Oil as an additional insured, Two "R" Drilling was in breach of contract. As a result, Two "R" Drilling was not entitled to defense and indemnity.
In Spell, the trial court found that the indemnity and insurance provisions were completely independent of each other. Thus, the indemnity provision required Union Oil to defend and indemnify Two "R" Drilling against actions brought by Union Oil's employees. Thus, Union Oil could not compel Two "R" Drilling's insurer to provide coverage prior to Union Oil's insurer's coverage.
We find that the facts in Spell are similar to the facts in our present case. National Union/Miller were obligated to defend and indemnify claims brought by Miller's employees against Louisiana Pigment pursuant to the Master Contract for Services. As a result, National Union's coverage must apply prior to Travelers.

"Sickness, illness, or disease" exception
National Union asserts that the "sickness, illness, or disease" exception to Miller's indemnity obligation is applicable to Mr. Carrier's claim since his exposure to the toxic fumes resulted in an illness. We disagree.
In his petition, Mr. Carrier alleges that he suffered injuries and burns to his face, skin, and lungs as he performed work duties at Louisiana Pigment. The combination of titanium tetrachloride and water produced a toxic discharge, resulting in physical trauma and bodily injury as Mr. Carrier was exposed to the substance.
We find that Mr. Carrier was seeking damages for his work-related injuries. Even if his injuries could be defined as an "illness," we do not find that the "sickness, illness, or disease" exception supplants the greater purpose of the provision, which is to indemnify Louisiana Pigment/Travelers for all claims that arise from an injury that occurred on site at Louisiana Pigment. Additionally, we find that this narrow exception does not apply in cases where the *811 employee suffers trauma as a result of a work-related incident. Thus, the trial court properly granted the motion for summary judgment.

Liability Cap
National Union asserts that the Master Contract for Services caps its liability at $3 million. According to National Union, Paragraphs 7 and 8 of the Louisiana Pigment/Miller contract pertaining to personal injury and property loss and insurance should be read together. In linking the two paragraphs, the maximum amount of liability coverage for National Union is $3 million. We disagree.
Paragraph 7, which is cited above, concerns the indemnity provision requiring Miller to indemnify Louisiana Pigment for suits brought by Miller's employees against Louisiana Pigment. Paragraph 8 indicates that Miller will acquire CGL insurance for $1 million and excess coverage in the amount of $3 million. Paragraph 7 does not indicate a monetary limit to Miller's indemnity obligation. In fact, it requires Miller to indemnify Louisiana Pigment for all losses or damages. Additionally, Paragraph 8 does not limit the scope of indemnity agreed to by Miller. Paragraph 8 indicates the least amount of coverage that Miller must provide under the terms of the Louisiana Pigment/Miller contract. In this case, Miller chose to provide $1 million in CGL insurance and $5 million in excess liability. Miller had every right to provide coverage in excess of what was required. National Union cannot now limit Miller's coverage to a $3 million cap, when there was no cap imposed.
We find support for our reasoning in Myers v. Burger King Corp., 92-400 (La. App. 4 Cir. 5/26/94); 638 So.2d 369, in which the fourth circuit rejected a similar argument made by Parkway Construction Company in its agreement with the Burger King Corporation. Under the Burger King/Parkway contract, Parkway argued "that as the indemnity clause makes reference to the insurance clause, the indemnity clause must limit itself to the minimum insurance provided, or $1,000,000." Id. at 381. The terms of the indemnification and insurance agreements in Myers are provided below:
INDEMNIFICATION: The contractor shall indemnify, defend and save and hold harmless the Owner from those claims set forth in the above paragraph captioned Insurance, including reasonable attorneys' fees.
INSURANCE: The contractor shall maintain insurance to protect the Owner... from claims which may arise from the Contractor's operations, whether such operations be by himself, any sub-contractor, anyone directly or indirectly employed by any of them, or by whose acts they may be liable.
This insurance shall be written for not less than limits of liability required by law, or $1,000,000 aggregate ... whichever is greater.
Burger King Corporation ... shall be named as additional [insured] under this policy.
Id. at 380-81.
The fourth circuit found that the indemnity clause did "not limit itself to the minimum amount of insurance coverage provided in the insurance clause. It clearly state[d] that the indemnity [was] required for all of the claims that were previously listed in the insurance clause." Id. at 381. Like National Union, Parkway provided more coverage than what was required in the insurance provision. Additionally, the $1 million insurance provision was the minimum insurance that could be provided. Similarly, we find that the trial court did not err in its finding that National Union's *812 coverage was not limited to a $3 million cap. In fact, Louisiana Pigment would be entitled to indemnity in the amount of $5 million under the excess liability insurance provided by National Union.

Costs and Attorney Fees
National Union argues that Louisiana Pigment may not recover costs and attorney fees it incurred in pursuing claims of coverage and indemnity against National Union. We disagree.
In the Louisiana Pigment/Miller contract, the indemnity provision states that Miller is obligated to indemnify Louisiana Pigment "from and against all ... losses, damages, suits and liability of every kind, including all expenses of litigation, court costs, and attorney's fees for damage to any property or for injuries ...." (Emphasis added).
We find no merit in National Union's assertion that the contract does not provide recovery of attorney fees and costs in the indemnity provision. Paragraph 7 clearly provides for costs and attorney fees incurred to pursue indemnity. We cannot ignore the plain language of the contract that forms the law between Miller and Louisiana Pigment. Accordingly, Louisiana Pigment is entitled to costs and attorney fees from Miller/National Union.
B. Travelers/Louisiana Pigment's Appeal

Sole Negligence Exception/Additional Insured Status
Travelers asserts that the trial court erred in not finding that Louisiana Pigment was an additional insured under the National Union insurance policy. According to the trial court, if Louisiana Pigment were found to be solely negligent, then Miller and National Union would have no obligation to defend and indemnify Louisiana Pigment. Further, Louisiana Pigment would not be an additional insured. Since one issue is predicated on the outcome of the other, we will address these two assignments of error together.
Louisiana Pigment filed motions for summary judgment on several issues pertaining to liability and indemnity coverage. Specifically, Louisiana Pigment requested summary judgment on the issue of whether plaintiff's injuries were caused by the sole negligence or sole fault of Louisiana Pigment. The trial court failed to grant Louisiana Pigment's motion for summary judgment on this issue, finding genuine issues of material fact existed whereby the mover was not entitled to judgment as a matter of law. "Only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law on the facts before the court is a summary judgment warranted." Cormier v. Albear, 99-1206, p. 5 (La.App. 3 Cir. 2/2/00); 758 So.2d 250, 254 (quoting Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94); 634 So.2d 1180, 1183). On questions of law, we are not required to give deference to the trial court. However, we are guided by the same standard on motions for summary judgment as the trial court, and we find that the trial court did not err in denying summary judgment on the sole negligence issue.
National Union asserts that there is a material issue of fact as to the issue of sole negligence. National Union submitted excerpts of the deposition testimonies of Mr. Carrier and Jasper Talbert[1]. In addition, National Union cited sixteen points in reference to the sole negligence issue. After *813 a review of the evidence, we find supportive evidence that material issues of fact exist. As a result, Travelers did not meet its burden of proof concerning liability because there is a genuine issue of material fact as to whether Louisiana Pigment was solely at fault. Thus, if Louisiana Pigment is solely negligent, Louisiana Pigment is not an additional insured.

Subrogation to the Rights of Louisiana Pigment
Travelers asserts that the trial court correctly granted Louisiana Pigment attorney fees incurred to pursue indemnity. As its insurer, Travelers asserts that it is legally subrogated to the rights of Louisiana Pigment, and it is also entitled to recover such attorney fees. We agree.
In the Reservation of Rights Agreement, Paragraph F indicates that Travelers is legally subrogated to the rights of Louisiana Pigment:
In further consideration of Travelers payment of a portion of this Settlement, Louisiana Pigment hereby assigns to Travelers, and/or subrogates Travelers, to the extent of any payment by Travelers in connection with this case, all of its rights and claims arising out [of] the injury of [Mr. Carrier] ... to resolve Mr. Carrier's suit against Louisiana Pigment for his injuries, including without limitation all claims for indemnity, ... attorneys fees, which rights and claims can be prosecuted by Travelers in the name of Louisiana Pigment, at the sole option of Travelers.
Based on the above provision, we find that Travelers is legally subrogated to the rights of Louisiana Pigment, including recovery of attorney fees.

IV.

CONCLUSION
For the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are to be divided equally between National Union Insurance Company, Miller Environmental Services, Inc., as third-party defendants-appellants and Louisiana Pigment Co., L.P. and Travelers Indemnity Company, as third-party plaintiff-appellee/cross-appellant and third-party defendant cross-appellant, respectively.
AFFIRMED.
NOTES
[1] Jasper Talbert, a former employee of Louisiana Pigment, was at the site of Mr. Carrier's accident. Talbert was given the off gas job on the night of the incident to oversee the cleaning of the hydroblasting of the piping.