772 So.2d 974 (2000)
Telles J. BRUNET, Jr., et al.
v.
AVONDALE INDUSTRIES, INC., et al.
No. 99-CA-1354.
Court of Appeal of Louisiana, Fifth Circuit.
December 5, 2000.
Opinion Denying Rehearing December 18, 2000.
*975 Mickey P. Landry, Frank J. Swarr, Landry & Swarr, and Ronald L. Motley, Charles W. Patrick, Ness, Motely, Loadholt, Richardson & Poole, New Orleans, Louisiana, Attorneys for the Brunet Family Plaintiffs/Appellants.
Mary L. Dumestre, Stone, Pigman, Walther, Wittmann & Hutchinson, L.L.P., New Orleans, Louisiana, and Blue Williams, L.L.P., Brian C. Bossier, Virgil A. Lacy, III, Mickal P. Adler, Marc E. Devenport, Erin H. Boyd, Metairie, Louisiana, Attorneys for Avondale Industries, Inc., Defendant/Appellee.
Samuel M. Rosamond, Fleming & Rosamond, Metairie, Louisiana, Attorney for Commercial Union Insurance Company, Defendants/Appellees.
Robert E. Caraway, Kenan Rand, Jr., Wendy Lappenga, Plauche, Maselli, Landry & Parkerson, New Orleans, Louisiana, Attorneys for American Motorists Ins. Co., Peter Territo, and Steven Kennedy, Defendants/Appellees.
Philip Borne, Christovich & Kearney, New Orleans, Louisiana, Attorney for Highlands Ins. Co., Defendants/Appellees.
Gordon Wilson, Lugenbuhl, Burke, Wheaton, Peck & Rankin, New Orleans, Louisiana, Attorneys for Travelers Insurance Company, Defendant/Appellee.
Panel composed of Judges CHARLES GRISBAUM, Jr., THOMAS F. DALEY and CLARENCE E. McMANUS.
DALEY, Judge.
Plaintiffs/appellants, June R. Brunet, Sheila Fernandez, Sandilyn Brunet, and Paula LaChica, as the survivors of Telles Brunet (collectively "Brunet"), appeal the judgment of the trial court dismissing their claims against defendant/appellee, Avondale Industries, Inc. ("Avondale"). Avondale, its executive officers, and their insurers have filed answers to the appeal. Brunet died of lung cancer on May 16, 1998, allegedly caused by exposure to asbestos-containing products while he was an employee of Avondale from 1950-1978. Brunet alleges, among other Assignments of Error, that the trial court erred by not entering judgment against Avondale, specifically on the issue of strict liability. For the following reasons, we affirm.

STATEMENT OF FACTS
Tells Brunet was employed by Avondale from 1950-1978. He worked at the Harvey *976 Quick Repair Yard where he was exposed to asbestos-containing products throughout the years of his employment. Brunet, a heavy smoker for many years, contracted lung cancer and passed away on May 16, 1998.
On May 13, 1998, Brunet filed a Petition for Damages against Avondale and, among others, four of its executive officers: Peter Territo, Steven Kennedy, John Chantrey and James O'Donnell (collectively "officers"). The insurers of the officers, Commercial Union Insurance Company, American Motorists Insurance Company, Highlands Insurance Company, and Travelers Insurance Company, were also named as defendants in the suit. As stated above, Brunet died shortly after the filing of the petition. His wife and three daughters were substituted as party plaintiffs and proceeded with the suit on survival and wrongful death claims.
Both Avondale and its officers filed cross claims and third party claims against various product manufacturers and a number of their executive officers alleging product liability, negligence, strict liability, intentional tort, fraud, conspiracy, and misrepresentation. Many of the officers' third party claims were dismissed as res judicata. Avondale's cross claims were severed from the trial of the main demand.
On July 21, 1999, a twelve person jury was empaneled and the case went to trial. The trial proceeded through August 5, 1999, at which time the trial court granted a directed verdict in favor of Avondale regarding the wrongful death claim.[1] The trial court also concluded that Brunet had failed to establish a strict liability claim against Avondale and refused jury charges or jury interrogatories on that issue. The jury then retired for deliberations.
On August 6, 1999, the jury returned a verdict finding that Brunet's exposure to asbestos-containing products at Avondale was a substantial cause of his lung cancer, but found Avondale not negligent. The jury also found that the officers were not negligent in providing Brunet a safe place to work. The jury did find various other entities, namely the asbestos-containing products manufacturers, liable to Brunet in the amount of $302,000.00. On August 11, 1999, the trial court issued its judgment adopting the jury's verdict and dismissing Brunet's claims against Avondale, Territo, Kennedy, American Motorists, Commercial Union, Highlands and Travelers.[2]
On August 17, 1999, Brunet filed a Motion for Judgment Notwithstanding the Verdict, which was subsequently denied by the trial court. On September 8, 1999, Brunet filed an Order of Appeal that was subsequently granted by the trial court. The officers filed an Answer to the appeal on December 22, 1999. Avondale filed an Answer to the appeal on December 23, 1999.
After the appellants' brief was filed, the Avondale executive officers filed a Motion to Dismiss the Appeal with respect to the officers and their insurers. On February 9, 2000, this Court ruled that the Motion to Dismiss would be referred to the merits of the appeal. The matter is now before this Court for review.

LAW AND ANALYSIS
Brunet alleges thirteen assignments of error on appeal. First, Brunet alleges that the trial court erred by not entering judgment in his favor and against Avondale. Second, Brunet alleges that the jury erred by rendering an inadequate award for general damages. Third, Brunet alleges that the trial court erred by admitting into evidence deposition testimony of witnesses taken in previous litigations of which Brunet was not given notice, did not attend, and at which he was not adequately *977 represented. Fourth, Brunet alleges that the trial court erred by including the names of persons on the interrogatories with whom he had not previously settled and against whom he would have no cause of action under Louisiana law. Fifth, Brunet alleges that the trial court erred by not providing the jury with an interrogatory regarding the parties in Assignment of Error Four, substantially similar to Jury Interrogatory No. 5. In Assignments of Error Six through Thirteen, Brunet alleges that the jury erred in its response to Jury Interrogatory No. 9, in that no reasonable finder of fact could determine from the evidence that Garlock, Inc., Uniroyal Inc., Pittsburgh-Corning Corp., Johns Manville Corp., Owens-Corning Fiberglass Corp., Owens-Illinois, Inc., Dr. John Konzen or Richard F. Shannon are liable for his injuries.
Avondale and its executive officers have filed two separate Answers to this appeal. In their Answer, the officers once again re-urge their Motion to Dismiss the Appeal. We note that in his brief Brunet has not assigned as error the trial court's dismissal of his claims against the executive officers of Avondale named in the suit. Under Rule 2-12.4 of the Uniform Rules of the Courts of Appeal, the Court may consider as abandoned any specification or Assignment of Error that has not been briefed. Absent such specification in brief, Brunet's appeal against the executive officers of Avondale and their insurers must be dismissed.[3] Only Brunet's appeal on the issue of Avondale's potential liability and the Answer to the appeal filed by Avondale will be addressed by this Court.
In its answer, Avondale alleges three assignments of error. First, Avondale alleges that the trial court erred in holding that Brunet had a cause of action premised on the theory of negligence. Avondale alleges that this cause of action is barred by the exclusive remedy provision of the Louisiana Workers' Compensation Act. Second, Avondale alleges that the trial court erred by refusing to charge the jury on the issue of whether Brunet contracted lung cancer after September 30, 1976. Under the law in effect at the time of Brunet's contraction of lung cancer, the exclusive remedy was under the Louisiana Workers' Compensation Act. In its third Assignment of Error, Avondale alleges in the alternative that there was no error in the decision of the jury and/or the trial court dismissing the claims against Avondale and its executive officers and insurers.

APPLICABILITY OF WORKERS' COMPENSATION LAW
In our analysis, we find determinative the issue raised by Avondale in its Answer to Appeal, that plaintiff may not sue Avondale in tort because his illness is a covered occupational disease under LSA-R.S. 23:1031.1 as it was in effect at the time of his employment at Avondale.
Mr. Brunet has alleged that he contracted cancer in the 1990's resulting from exposure to asbestos while working at Avondale from 1950 to 1978. The jury made a specific finding of fact that Mr. Brunet's exposure to asbestos-containing products at Avondale was a substantial cause of his lung cancer. Avondale, as plaintiffs employer, argues that it is immune from tort suit, as per LSA-R.S. 23:1032. The 1976 amendment rewrote R.S. 23:1032; the applicable section previously read:
"The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations.
Avondale asserts that Mr. Brunet's only legal remedy against his employer or his dependents for his lung cancer is workers' compensation benefits. Avondale argues *978 that lung cancer that has been caused by exposure to asbestos is an occupational disease recognized by the workers' compensation statutes. Avondale admits that lung cancer was not a listed occupational disease prior to 1976. Avondale argues that asbestos is both an oxygen compound, as per LSA-R.S. 23:1031.1(A)(1)(d), and a metal compound, as per LSA-R.S. 23:1031.1(A)(1)(g), and because these disease-causing agents are listed by LSA-R.S. 23:1031.1, plaintiffs exclusive remedy is workers' compensation. Avondale argues that the inquiry does not end merely with a finding that the disease is not specifically listed in R.S. 23:1031.1; the court must then inquire whether the disease's pathogen is included in the statute's list. The inquiry does not stop with a determination that the pathogen is not listed by name. Avondale argued to the trial court that asbestos is covered by the list because it is both an oxygen compound (A)(1)(d)) and a metal compound (A)(1)(g)).
LSA-R.S. 23:1031.1 defines the coverage and burden of proof for occupational diseases, and at the time of the majority of Brunet's employment at Avondale, provided, in pertinent part:
Every employee who is disabled because of the contraction of an occupational disease as herein defined, or the dependent of an employee whose death is caused by an occupational disease, as herein defined, shall be entitled to the compensation provided in this Chapter the same as if said employee received personal injury by accident arising out of and in the course of his employment.
A. An occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment as a result of the nature of the work performed, except as herein specified.
(1) Poisoning by or other disease resulting from contact with:
(a) the halogens, halogen compounds, and halogenated hydrocarbons
(1) alkaline materials
(2) arsenic, phosphorus, selenium, sulfur, tellurium, and their compounds
(d) oxygen, nitrogen, carbon, and their compounds
(e) cyanides and cyanogen compounds
(f) lead and lead compounds
(g) metals other than lead and their compound
(h) aliphatic hydrocarbons and their nitro, diaso and amino compounds
(1) aromatic and cyclic hydrocarbons and their nitro, amino and other compounds
(j) alcohols
(k) organic and inorganic acids and their derivatives and compounds
(1) esters of aliphatic, aromatic and inorganic acids
(m) aldehyde
(n) ketones
(o) ethers, glycol ethers, and their compounds
(p) phenol and phenolic compounds
(2) Diseased condition caused by exposure to X-rays or radioactive substances.
(3) Asbestosis.
(4) Silicosis.
(5) Dermatosis.
(6) Pneumoconiosis.
(7) Tuberculosis when contracted during the course of employment by an employee of a hospital or unit thereof specializing in the case and treatment of tuberculosis patients.
(Emphasis added.)
Avondale made this argument to the trial court; the trial court ruled against Avondale, relying on Gautreaux v. Rheem Manufacturing Company, 96-2193 (La. App. 4 Cir. 12/27/96), 694 So.2d 977. After thorough consideration, we find that the trial court's reliance on Gautreaux was error. Avondale submitted proffers AN in support of their position that asbestos is *979 a listed pathogen in R.S. 23:1031.1. We find that asbestos is both an oxygen compound and a metal compound as per R.S. 23:1031.1, and because plaintiffs cancer is alleged to have been caused by his exposure to asbestos while employed at Avondale, his exclusive remedy against Avondale for this occupationally-caused disease is workers' compensation benefits.
Both Avondale and Brunet cite the Gautreaux case; plaintiff for the position that asbestos has already been determined NOT to be an oxygen compound for the purposes of R.S. 23:1031.1; defendant Avondale to point out that the case is not controlling because of its weak procedural posture (the affirmance of a denial of exception of no cause of action) and that it garnered only a plurality of a five judge panel.
In Gautreaux, the plaintiffs filed suit for damages incurred in the death of Charles Gautreaux from lung cancer, whose death was alleged to have been caused by exposure to asbestos during his employment at Rheem Manufacturing Company from 1946 to 1982. Defendant Rheem argued by exception of no cause of action that, under former LSA-R.S. 23:1031.1(A)(1)(d), asbestos was an oxygen compound and therefore the plaintiffs' exclusive remedy was in workers' compensation. The exception was denied and Rheem sought supervisory review. The Fourth Circuit, in a five-judge panel, granted the application to affirm the decision of trial judge denying relator's exception of no cause of action. Two judges joined in a plurality determination that asbestos was not an oxygen compound as per R.S. 23:1031.1. One judge concurred in the result only, noting that the court was not considering a summary judgment and stating that this matter required a trial where expert scientific evidence might be elicited. In a blistering dissent, the two remaining judges strongly disagreed with the two-judge plurality's analysis and misplaced reliance on other cases (discussed below).
In Gautreaux, the plurality held:
We find no error in the denial of relator's exception of no cause of action. The record contains an extensive dispute over whether asbestos is better characterized as a "mineral" or a "compound" for the purposes of former La. R.S. 23:1031.1(A) 1(d). The attached affidavit of an expert witness suggests that asbestos would be better described as a mineral in the context of the scientific terminology appearing in the statute. Thus, on this showing, it has not been established as a matter of law that asbestos must be considered an "oxygen compound" within the context for former Subsection (d). Accordingly, the trial judge correctly denied the exception of no cause of action.[4]
It is clear the court found that the defendant Rheem had not presented enough evidence, in its exception of no cause of action and in its writ application, to establish its position as a matter of law. Despite this finding, the two-judge plurality went on, inappropriately at this procedural posture, to evaluate the evidence and argument that the parties presented, and then found that asbestos was not an oxygen compound as per R.S. 23:1031.1.
Other courts have since relied upon Gautreaux for the position that asbestos is not an oxygen compound[5], but we find that Gautreaux made no such definitive determination, given that only a two-judge plurality of the court found that asbestos could not be considered an oxygen compound as per R.S. 23:1031.1.[6] A denial of a *980 writ application does not prevent the parties from making an additional showing at trial, and thus does not preclude a trial court from making a different ruling following the presentation of additional evidence at trial.
The Gautreaux plurality relied upon two cases in making its ruling: Hicks v. Liberty Mut. Ins. Co., 165 So.2d 51, 53 (La.App. 2d Cir.1964); and Thomas v. Armstrong World Indus., Inc., 95-2222 (La.App.lst Cir. 6/28/96), 676 So.2d 1185, writ denied, 96-1965 (La.11/1/96), 681 So.2d 1272. As noted by the dissenters, the plurality's reliance on these two cases is misplaced.
In Hicks, plaintiff sought workers' compensation benefits for emphysema allegedly caused by exposure to flour. The court denied benefits, holding that emphysema was not a covered disease, nor did plaintiff present evidence that flour contained, in sufficient quantity to produce emphysema, chemical compounds enumerated in R.S. 23:1031.1 as the causes of compensable diseases. The Hicks case did not discuss the compounds at issue here (oxygen, metal). It is not clear which compounds or substances the Hicks court considered or their percentage representation in flour. The following is the sum of the Hicks court's discussion:
Since bronchitis, bronchiolitis and emphysema are not named as diseases for which an employee may recover workmen's compensation, even if causally connected with his employment, we turn to that portion of the statute relating to diseases resulting from contact with the enumerated chemicals or other materials. Plaintiff, in an effort to show that the flour contained either one or a combination of the chemicals and compounds designated in the statute produced the testimony of several eminent physicians and one chemist. From our study of this testimony, we are convinced that flour does not contain any of the elements or their derivatives listed in sufficient quantities to produce emphysema. Therefore, we conclude the plaintiff's disability is not proved to be the result of contact with any of the chemicals or compounds enumerated in LSA-R.S. 23:1031.1 B(1).
Though the court denied benefits, its method of analysis supports Avondale's interpretation of R.S. 23:1031.1.
Gautreaux also relies on Thomas v. Armstrong World Indus., Inc.; however, that case held that lung cancer was not compensable because it was not a listed disease and asbestos was not a listed substance. It did not consider whether asbestos might be a listed compound. Further, the Thomas court considered the grant of an exception of no cause of action filed by the defendant ANCO; in reversing it, the court said:
While Anco presents an interesting argument to support the inferential inclusion of asbestos in the provided list of substances within La. R.S. 23:1031.1, it is not sufficient to overcome the fact that asbestos is simply not specifically written as one of the exclusive substances; nor, is lung cancer provided as one of the diseases that falls under the restricted ambit of a workers' compensation action. The focal issue to be judicially determined is whether the lung cancer was independently caused by asbestos or, alternatively, whether it was a progression of the asbestosis disease that Mr. Thomas had simultaneously contracted. See, Wallace v. Kaiser Aluminum & Chemical Corporation, 586 So.2d 149 (La.1991). Defendant is not precluded from demonstrating at the trial level that the asbestosis initiated the lung cancer and, therefore, the lung cancer would be encompassed within the diseases limited to workers' compensation. However, this is not a legal conclusion that can be determined from the face of the pleadings alone.
Thomas's analysis is flawed in the same way as Gautreaux's and this trial court's because it did not consider whether asbestos could be a listed compound. And, *981 Thomas's procedural posture is just as weak as Gautreaux's, because it, too, considered an exception of no cause of action. Therefore, we agree with Avondale that the Gautreaux court's reliance on Thomas to support its conclusion was misplaced.
Gautreaux is also weak, procedurally, because the Supreme Court's writ denial does not necessarily mean that the Supreme Court approved the plurality's conclusion on asbestos's properties; it may only mean that the Supreme court considered the result, the affirmance of the denial of the no cause of action, correct. Additionally, Gautreaux did not consider whether asbestos might be a metal compound. To elevate Gautreaux's dicta about asbestos's classification to proof of the ultimate issue is cursory, shallow legal analysis. No court appears to have fully considered, at a trial on the merits with expert testimony and evidence, whether asbestos should be considered an oxygen and/or metal compound as per R.S. 23:1031.1. Gautreaux's inappropriately drawn conclusions do not relieve this and other courts of the necessity of considering this important threshold issue in a proceeding with full proof. By blindly relying on a case as weak as Gautreaux, the trial court deprived Avondale of its day in court.
Avondale cites several cases[7] for the position that plaintiffs disease, though not listed, should be covered in workers' compensation because the pathogen is listed as an included substance or compound thereof, though the pathogen might not be listed by name.
In Zeringue v. Fireman's Fund Am. Ins. Co., 271 So.2d 613 (La.App. 1 Cir. 1972), plaintiff alleged he contracted bullous emphysema from the spray paint fumes. The court found a causal connection between his spray painting job and his illness. The court recognized that his ailment was not a listed disease, but, citing Hicks, found that the spray paint contained enough enumerated substances to make his illness compensable as an occupational disease under the statute.
"... a qualified industrial toxicologist reviewed this paint formula and testified that the paint contained mineral spirits, toluene and ethyl alcohol. These three solvents combined to comprise approximately 38% of the paint formula. Dr. Rinehart further testified that these substances are included in the listed substances under LSA-R.S. 23:1031.1, subd. B, (1), (h), (i), and (j). He also stated that one substance listed as being in the paint, ketoxime, might be ketone, which is listed in subsection (n) of the statute."
Similarly, in Riley v. Avondale Shipyards, 305 So.2d 742 (La.App. 4 Cir.1974), plaintiff was compensated for an unspecified occupational lung disease caused by detergent spray, which contained compounds of phosphorus, sulphur, and metals, included in R.S. 23:1031.1, subd. B(1)(c) and (g).
In Bernard v. Louisiana Wild Life and Fisheries Commission, 152 So.2d 114 (La. App. 3 Cir.1963), plaintiff recovered compensation for occupational diseases, chemical pneumonitis and emphysema, caused by his inhalation of the chemical spray 2-4-D. Neither disease was specifically listed in R.S. 23:1031.1, and neither was the pathogen, 2-4-D (Dichlorophenoxyacetic Acid), but plaintiff was awarded workers' comp benefits under R.S. 23:1031.1. There was no discussion as to the chemical properties of 2-4-D, other than it was toxic and an irritant, but implicit in the court's analysis is the fact that 2-4-D was a listed compound.
Avondale's argument, therefore, is legitimate. For a plaintiffs occupational disease to be covered under workers' compensation, his occupational disease need *982 not be specifically listed by name in former R.S. 23:1031.1. The inquiry does not end with the finding that the disease is not listed; courts must determine if the pathogen is listed, and must go the extra step, if the pathogen's name is not listed, to determine if the substance is included in the subcategories. In the above cases, none of the pathogens were listed by name, but were found to fall within several categories as compounds of listed elements and metals.

Consideration of expert testimony and proffers
Avondale presented the following evidence in proffers A-N. They would have called Dr. Harry Ensley, a professor in chemistry at Tulane University (with a Ph.D. in chemistry from Harvard University[8]). He would have testified that asbestos falls into the category of "oxygen and its compounds" and "metals and their compounds."
The Handbook of Chemistry and Physics defines "compounds" as:
Compounds are substances containing more than one constituent element and having properties, on the whole, different from those which their constituents had as elementary substances.[9]
Hawley's Condensed Chemical Dictionary defines a compound as:
Compound. (1) A substance composed of atoms or ions of two or more elements in chemical combination. ... A compound is a homogenous entity where the elements have definite proportions by weight and are represented by a chemical formula. A compound has characteristic properties quite different from those of its constituent elements.[10]
Three compounds are offered as examples. Water is a compound of hydrogen (a flammable gas) and oxygen (a gas)H2O. When joined together, they produce a nonflammable liquid.[11]
Table salt is a metal compound (NaCl). It is composed of sodium, a metal that explodes in water, and chlorine, a poisonous yellow gas. When combined to form table salt, they create a white non-poisonous solid that dissolves in water.
Rust (Fe2O3), or iron oxide, is a compound of oxygen and iron. Iron is a metal that is a good conductor of electricity. Oxygen is a gas. Combined, they form rust, which is a solid that is a poor conductor of electricity. Rust is both a metal compound and an oxygen compound.
There six forms of asbestos: chrysotile, amosite, crocidolite, tremolite, actinolite, and anthophyllite.[12] Proffer "J" gives their chemical compositions, formulas, and lists their oxygen contents both by weight and number of atoms. The proffer shows that oxygen is a significant component of all forms of asbestos, and that each form of asbestos contains a significant amount of different metals. Chrysotile asbestos is the most common and represents over ninety (90%) of the asbestos used in industrial applications.[13] Its oxygen content is 51.96% by weight, and 50% by number of atoms.
Professor Ensley would have testified that oxygen and metal are vital components of asbestos, which, if removed, would leave a substance that is no longer asbestos. He would have testified that there is no distinction, in chemistry, between the terms "oxygen and its compounds," "oxygen-containing compounds," and "compounds that contain oxygen."
Avondale proffered the deposition testimony of Dr. Gerald Liuzza.[14] Dr. Liuzza *983 is the expert the Fourth Circuit relied upon in Gautreaux. However, Dr. Liuzza is a pathologist, not a chemist. A pathologist studies the causation of diseases. In his deposition, he states that he would defer to chemists for the definition of "chemical compound." His deposition also displayed a fundamental misunderstanding about the designation "metal and their compounds" and "oxygen and its compounds." Dr. Liuzza argued that no matter how much metal asbestos contained, it is still not a metal itself. That, however, is not the inquiry for the purposes of RS 23:1031.1 and its list. Nowhere does that statute say that a metal compound must also be categorized as a metal itself. The textbook definitions of compound used above make clear that compounds can and do display different characteristics than their constituent elements. Dr. Liuzza also argued that asbestos would not be an oxygen compound because it did not display the reactivity typical to oxygen.[15] However, again, the textbook definition of compound recognizes that compounds may not display the same chemical characteristics, including reactivity, of their constituent elements. The categorization of a substance as a compound does not depend on the substance reacting like its constituent elements.
Plaintiffs argue that the legislature could not have meant these categories to read so broadly, because then "everything" would have been included. However, we must take note that the term "compound," from a chemistry perspective, is a term of art; it has a specific, finite definition of which courts can take judicial notice.[16] The legislature, in using it, is presumed to have understood that. The real question is not whether asbestos is an oxygen compound from a chemical perspective, because clearly it is, but rather did the legislature intend to include substances such as asbestos in categories such as oxygen and metal compounds.
We consider persuasive the fact that asbestosis, an occupational disease caused by asbestos exposure, is included as a compensable occupational disease, as evidence that the legislature intended to include all occupational diseases caused by asbestos exposure. It is well settled that the provisions of the Workers' Compensation Law must be given a liberal interpretation in order to effectuate its beneficent purpose of relieving workmen of the economic burden of work-connected injuries by diffusing the cost in the channels of commerce. Lester v. Southern Cas. Ins. Co., 466 So.2d 25 (La.1985). Given the focus of the workers' compensation scheme, which is to cover employees who are injured in the course and scope of their employment under the compensation scheme,[17] it is not logical that the legislature intended to provide coverage for only some of the workers made sick from asbestos exposure, and not others.[18] The legislature's action in specifically listing the disease asbestosis could be attributed to their limited knowledge of the disease processes caused by asbestos exposure (and their latency) at the time the statute was enacted (1958). Plaintiffs' interpretation of the workers' compensation statutes creates a scenario where side-by-side workers, exposed to the same disease causing agent (here, asbestos), will be covered differently depending on the specific disease they develop. Such a result is *984 contrary to the spirit and purpose of the workers' compensation scheme. Plaintiff's cancer, if caused by asbestos exposure while in the course and scope of his employment[19], should be covered under workers' compensation the same as his asbestosis. This court finds that asbestos is a pathogen included in the list in R.S. 23:1031.1 (1958), and therefore, plaintiff's exclusive remedy for an occupational disease alleged to have been caused by asbestos is under the workers' compensation scheme.
Because we find this issue case determinative, the remaining assignments of error are pretermitted and will not be considered by this court. Accordingly, though for different reasons, we affirm the judgment of the trial court.
MOTION TO DISMISS PLAINTIFFS' APPEAL AS TO AVONDALE EXECUTIVE OFFICERS GRANTED; JUDGMENT AFFIRMED.
McMANUS, J., dissents with reasons.
McMANUS, J., respectfully dissenting for the following reasons.
I respectfully dissent from the majority opinion in this case. For the following reasons, I would affirm in part, reverse in part, and amend the judgment of the trial court.

Brunet's Appeal
In the first assignment of error, Brunet alleges that the trial court erred by not entering judgment in his favor and against Avondale. Brunet alleges that the trial court erred by not giving the jury an instruction on the issue of Avondale's strict liability. The trial judge held that the instruction was not warranted as Brunet had not carried his burden of proving strict liability on the part of Avondale.
Strict liability is defined under LSA-C.C. art. 2317, which states in part:
"We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody."
While the 1996 Tort Revision changed strict liability law and added LSA-C.C. art. 2317.1, the pre-revision law applies in this case because Brunet's cause of action accrued during the time that he worked at Avondale from 1950-1978. The Supreme Court has held that the key relevant events giving rise to a claim in long-latency occupational disease cases such as this are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later.[1] Under this interpretation of the law, Brunet's cause of action accrued while working at Avondale and the law in effect at the time of the accrual is the law which must be applied in this case, regardless of when the disease was actually discovered or when the petition was actually filed.
An owner's liability for a vice or defect on the premises is rooted in LSA-C.C. arts. 2317 and 2322.[2] Both articles impose strict liability, or liability without fault, based upon status as an owner or custodian rather than on personal fault.[3]
To recover under LSA-C.C. art. 2317, a plaintiff must prove that he was injured by a thing which was in the care or custody of the defendant and that such thing was defective.[4] Strict liability requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an *985 unreasonable risk of harm to others.[5] There is an irrebuttable presumption that the custodian had knowledge of the defective condition.[6] Once the plaintiff has established a defect and custody, the only defenses available are the fault of the victim, the fault of a third person, or causation by irresistible force.[7]
Because the decision as to whether a thing creates an unreasonable risk of harm is a legal question, the Court owes no deference to the legal conclusions of the trial court.[8] Appellate review regarding questions of law is simply review of whether the trial court was legally correct or legally incorrect.[9]
The issue of whether or not Avondale is strictly liable to Brunet is a question which must be limited to the facts of this case. Justice and social utility must serve as guideposts and moral, social and economic values must be considered in determination of whether the risk of harm is unreasonable.[10] Claims and interests should be balanced, risk and gravity of harm should be weighed, and individual and societal rights and obligations must be considered.[11]
In the present case, the trial judge chose not to allow the jury to be charged with strict liability as defined under LSA-C.C. art. 2317. During the charge conference, the trial judge stated that Avondale had a duty in negligence to Brunet under LSA-C.C. arts. 2315 and 2316, but did not have a duty to Brunet under LSA-C.C. art. 2317. I disagree.
As noted above, in order to prove strict liability, Brunet need only prove that he was injured by a defective product in the custody of Avondale. There is no question that Brunet suffered injury. Dr. Liuzza testified that Brunet's exposure to asbestos was a substantial cause of his lung cancer. Dr. Liuzza further stated that the scar tissue in his lungs from the asbestosis he had previously contracted was not a substantial cause of the lung cancer. At the conclusion of the deliberation, the jury found that Brunet's lung cancer was directly attributed to his exposure to asbestos at Avondale's facility. Absent a manifest abuse of discretion, I do not believe that the jury erred in this conclusion. The first element of a strict liability claim, the injury, has been proven.
The second element of a strict liability claim that a plaintiff must prove is that the thing which caused the injury was defective. As noted above, a thing is considered defective if it presents an unreasonable risk of harm. Testimony and evidence have proven that continuous exposure to asbestos and the dust accompanying the use of asbestos is harmful and extremely dangerous. Brunet was exposed to asbestos-containing products used at Avondale throughout the twenty-eight years that he was employed there. Brunet testified by deposition that while employed at Avondale, he used products such as gaskets, cloth, cement, and pipe covering all of which contained asbestos. In order to use these products effectively, they often had to be cut, or in the case of the cement, mixed into a mud-like substance. When the gaskets, cloth or pipe covering were cut, they released asbestos dust into the air which was inhaled by Brunet. When the cement was mixed, it also released dust into the air. Brunet did not use, nor was he provided, a mask or respirator when using these asbestos-containing products. Brunet's deposition *986 testimony was supported by the testimony of other workers at the Avondale facility. Expert witnesses testified that asbestos fibers in the dust, if inhaled or ingested, would be a substantial cause of lung cancer. It is my conclusion that Brunet's work with the asbestos-containing products posed an unreasonable risk of harm and the product must be considered defective. The second element of a strict liability claim has been proven by Brunet.
Avondale disputes the allegation that it had custody, or garde, of the asbestos-containing products. This is the third and final element of a strict liability claim. It is Avondale's contention that since the products were used on ships which only passed through the repair yard, it did not actually have control over the products. "Custody," for purposes of strict liability, does not depend upon ownership, but involves the right of supervision, direction, and control as well as the right to benefit from the thing controlled.[12] Additionally, mere physical presence of the thing on one's premises does not constitute custody.[13]
Brunet alleges that Avondale did have custody of the products because it had control over the products and they were used both in the facility and on the ships. Determining who has garde of a thing is a question of fact.[14] Considerations relevant to this determination include: (1) the benefit received from the thing; and (2) the right of direction and control over the thing.[15]
All manner of asbestos-containing products (such as the gaskets, cloth, cement and pipe covering listed above) were purchased by Avondale from various distributors and manufacturers for use at the repair yard and on the ships. Testimony of various witnesses corroborated the fact that these products were used frequently during the time of Brunet's employment. While mere physical presence does not constitute custody, it is my opinion that Avondale had the right of direction and control over the asbestos-containing products. The products were stored at the repair yard and used both in the repair yard and on the ships. Avondale had control over which products were to be used and how they were to be used. Custody, the third and final element of the strict liability claim, has been proven by Brunet.
Third party fault is a defense to a strict liability claim pursuant to LSA-C.C. arts. 2317 and 2322.[16] The fault of a "third person" which exonerates a person from his own obligation imparting strict liability as imposed by LSA-C.C. art. 2317 is that which is the sole cause of the damage, of the nature of an irresistible and unforeseeable occurrence.[17] Unless the fault of the third party was the sole cause of the plaintiff's harm, the third party fault does not absolve the defendant of its liability under LSA-C.C. art. 2317.[18] (Emphasis added).
It has been Avondale's contention that the product manufacturers are the parties at fault and that their negligence is the cause of Brunet's injuries. Avondale has filed third party claims against numerous product manufacturers and their officers and the jury found eight of these parties liable for Brunet's injuries. As noted above, Avondale's cross claims against the third party defendants were severed from the main demand and the issue of the *987 product manufacturers' negligence or any claim of third party fault was not properly before the trial court at that time. The trial court's error in this regard shall be discussed more fully below.
The trial court erred by not charging the jury with the issue of strict liability. A review of the record reveals that the evidence is sufficient to find Avondale strictly liable for the injuries sustained by Brunet. Brunet bore his burden of proving injury, defect and custody. Third party fault is not an issue and has not been proven at this time. While Avondale must be held liable for damages, it also retains its right to seek contribution from the third party defendants who have been severed from this suit in the main demand.
In the second assignment of error, Brunet alleges that the jury erred by rendering an inadequate award for general damages. The jury returned a verdict awarding Brunet $250,000 in general damages against six product manufacturers and two manufacturer officers. These damages reflect survival damages and do not include wrongful death damages, as the wrongful death claim was dismissed by the trial court and Brunet has not appealed the dismissal.
In appellate review of general damage awards, the court must accord much discretion to the trial court judge or jury.[19] The role of an appellate court in reviewing awards of general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trial court.[20] Only if the reviewing court determines that the trial court has abused its "much discretion" may it refer to prior awards in similar cases and then only to determine the highest or lowest point of an award within that discretion.[21]
Because the discretion vested in the trier of fact is "great," and even vast, an appellate court should rarely disturb an award of general damages.[22] It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.[23]
The trial court determined that Brunet suffered for six months prior to his death. He was seventy-three (73) years old at the time of his passing and had suffered from prior heart conditions. Considering his prior health conditions as well as his advanced age, and taking into account the amount of time that he actually suffered from the lung cancer, I do not believe that the trial court abused its vast discretion in its award of general damages to Brunet. The wrongful death claim has not been made a part of this appeal and was not taken into consideration by the jury in its award of damages. The award of $250,000 in general damages is not abusively low and should be affirmed.
In the third assignment of error, Brunet alleges that the trial court erred by admitting into evidence deposition testimony of witnesses taken in previous litigations that Brunet was not given notice of, did not attend, and was not adequately represented at the taking of. Brunet alleges that the deposition testimonies of Edmond Torbonne, Willis Hazard, John Thomas, Richard Shannon and Abdon Perque prejudiced his case and led to the jury finding various product manufacturers and manufacturer officers at fault.
LSA-C.C.P. art. 1450(A)(3)(a) states in part:

*988 "A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
(3)(a) The deposition of a witness, whether or not a party may be used by any party for any purpose if the court finds that the witness is unavailable.
Brunet alleges that in accordance with this article, the deposition testimony of the above listed witnesses could not be used in this trial because plaintiffs counsel was not present at or given notice of any of these depositions.
Avondale alleges that Brunet had notice that the deposition testimonies were to be used at trial and failed to object to them in a timely manner. Furthermore, Avondale alleges these witnesses are either dead, or live beyond the subpoena power of the trial court and were unavailable to them. Each of these witnesses testified to the potential liability of the various manufacturers in relation to Avondale and none of the testimony implicating any wrongdoing on the part of Brunet.
Avondale alleges that LSA-C.E. art. 804(B)(1) and (6) are pertinent to the admissibility of these deposition testimonies. The article states in part:
"B. Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a party with a similar interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
(6) Other exceptions. In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and the court his intention to offer the statement and the particulars of it ..."
The former testimony exception to the hearsay rule does not apply in this particular case. Brunet and the product manufacturers against whom the testimonies were used do not have similar interests. Because of this discrepancy, Avondale's reliance on LSA-C.E. art. 804(B)(1) is unfounded.
The hearsay exception enumerated in LSA-C.E. art. 804(B)(6) also does not apply in this case. While the exception is very broad and leaves much discretion to the trial judge, it is my opinion that the deposition testimonies should not have been allowed into evidence because Avondale's cross claims against the product manufacturers were not at issue in this trial.
The admission of these deposition testimonies prejudiced Brunet's case and should not have been allowed into evidence at this trial. Neither Brunet nor his counsel were present at these depositions and the information contained within these depositions do not pertain to either Avondale's liability or any fault on the part of Brunet. The depositions were admitted for the purpose of proving that the product manufacturers were at fault and liable in the cross claim to Avondale. Since the cross claim is not a part of this suit, the deposition testimonies were prejudicial and *989 irrelevant and the trial court's admission of such was erroneous.
Assignments of error four and five will be addressed jointly. In the fourth assignment of error, Brunet alleges that the trial court erred by including the names of persons with which he had not previously settled and against which he would have no cause of action under Louisiana law. In the alternative, in his fifth assignment of error Brunet alleges that the trial court erred by not providing the jury with an interrogatory regarding the parties alluded to in assignment of error four substantially similar to Jury Interrogatory No. 5. The persons referred to in these assignments of error include Edmond Torbonne, Willis Hazard, U.E. Bowes, Edward C. Ames, Harold Boeschenstein, Dr. John Konzen, Richard F. Shannon, John Thomas, Garlock, Johns Manville and Owens Illinois.
Under LSA-C.C.P. art. 1812, the trial court has wide discretion both in determining whether to use special interrogatories and in framing the questions to be posed.[24] Absent some abuse of that discretion, the appellate courts will not set aside such determinations.[25]
LSA-C.C.P. art. 1812 allows for the jury to determine the apportionment of fault of both parties and nonparties to the suit. The article states in pertinent part:
"C. In cases to recover damages for injury, death or loss, the court at the request of any party shall submit to the jury special written questions inquiring as to:
(2)(a)If appropriate under the facts adduced at trial, whether another party or nonparty, other than the person suffering injury, death or loss, was at fault, and, if so:
(i) Whether such fault was a legal cause of the damages, and if so:
(ii) The degree of such fault, expressed in percentage.
(b) For purposes of this Paragraph, nonparty means a person alleged by any party to be at fault, including but not limited to:
(i) A person who has obtained a release from liability from the person suffering the injury, death or loss ..."
A special verdict requiring a jury to return a special written finding on each issue of fact requires adequate jury interrogatories which fairly and reasonably point out the issues and which guide the jury in reaching a verdict.[26] If the trial court submits a verdict form to the jury with misleading or confusing interrogatories, such interrogatories do not adequately set forth the issues to be decided by the jury and may constitute reversible error.[27]
A finding of fault against a person not a party to the action is not binding on that person, and the plaintiff cannot recover against that person nor can the defendants obtain contribution from that person.[28] Because of these considerations, juries should not be required to quantify the fault of a person that no party sees fit to join in the suit as a defendant or a third party defendant unless there is a compelling reason, such as in the case of a settling tortfeasor.[29]
In the present case, the cross claims of Avondale against the third party product manufacturers and the third party manufacturer officers have been severed from the trial. Neither the parties nor their representatives were present at the trial of the merits. While they have been joined in the trial as third party defendants, their *990 severance from the trial makes them similar to a nonparty in principal. Unless Brunet has settled his lung cancer claim with any of these product manufacturer parties, the trial court erred in allowing the jury to apportion fault due to their alleged negligence.
Jury Interrogatory No. 9 was improper and the trial court erred by allowing it to be submitted to the jury. The alleged fault of the third party manufacturers and manufacturer officers is an issue that will be raised at the trial on the merits of Avondale's cross claim. Brunet has not filed suit against any of these parties, and absent a settlement with any of them, their fault cannot be used to reduce his recovery against Avondale.
In assignments of error six through thirteen, Brunet alleges that the jury erred in its response to Jury Interrogatory No. 9, in that no reasonable finder of fact could determine from the evidence that Garlock, Inc., Uniroyal Inc., Pittsburgh-Corning Corp., Johns Manville Corp., Owens-Corning Fiberglass Corp., Owens-Illinois, Inc., Dr. John Konzen or Richard F. Shannon are liable for his injuries. Eighteen manufacturers and manufacturer officers were listed under Jury Interrogatory No. 9 and the jury found the above eight parties to be liable.
If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.[30] Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong.[31]
The jury found the six product manufacturers and the two manufacturer officers liable to Brunet under the theory of negligence. This judgment was in error. The liability of the third party product manufacturers and manufacturer officers was not at issue in this trial. As Avondale's claims against them had been severed from the main demand, only Avondale's and its officers' potential liability to Brunet was at issue. As noted in Cavalier v. Cain's Hydrostatic Testing, Inc., supra, a finding of fault against a person not a party to the action is not binding on that person. The product manufacturers and the two manufacturer officers were not parties to the main demand and cannot be held liable for Brunet's injuries. The judgment of the trial court should be reversed.

Avondale's Answer to the Appeal
In its first assignment of error, Avondale alleges that the trial court erred in holding that Brunet had a cause of action premised on the theory of negligence. Avondale alleges that this cause of action is barred by the exclusive remedy doctrine of the Louisiana Workers Compensation Act ("Act").
Under Cole v. Celotex, supra, the pre-1975 version of the Louisiana Workers Compensation Act applies in this case. Avondale alleges that Brunet's lung cancer caused by asbestos-containing products falls under the occupational disease section of the Act and therefore his exclusive remedy would be in workers compensation, not in negligence or strict liability.
Under LSA-R.S. 23:1031.1, Brunet need only show exposure to an element listed in the statute or one of the diseases listed in the statute to be covered by the Act. The pertinent sections of LSA-R.S. 23:1031.1 read as follows:
"A. An occupational disease shall include only those diseases hereinafter listed when contracted by an employee in the course of his employment *991 as a result of the nature of the work performed.
(8) Poisoning by or other disease resulting from contact with
(d) oxygen, nitrogen, carbon and their compounds
(g) metals, other than lead and their compounds
(3) Asbestosis."
Avondale asserts that since Brunet's lung cancer was caused by an exposure to asbestos, which can be considered both an oxygen-based and metal-based compound, his exclusive remedy is under the Act and the negligence and strict liability claims must be dismissed. I disagree.
Asbestos is not specifically written as one of the exclusive substances under LSA-R.S. 23:1031.1; nor, is lung cancer provided as one of the diseases that falls under the restricted ambit of a workers' compensation action.[32] Asbestos would be better described as a mineral rather than a compound in the context of the scientific terminology appearing in the statute.[33] Thus it has not been established as a matter of law that asbestos must be considered an "oxygen compound" within the context of former Subsection (d) of LSA-R.S. 23:1031.1.[34] While asbestos does contain oxygen, all compounds that contain oxygen may not necessarily be oxygen compounds for the purposes of former Subsection (d).[35]
While both the First and Fourth Circuits have addressed the issue of whether or not lung cancer caused from exposure to asbestos is covered under the pre-1975 revision of LSA-R.S. 23-1301.1, both of the cases cited in this opinion were determined on issues pertaining to exceptions of no cause of action. It is undisputed that lung cancer is not a disease listed under the statute, but neither court actually addressed the evidence in detail to determine if asbestos is scientifically deemed an oxygen or metal based compound.
The trial court in this case refused to allow the testimony of Dr. Ensley to be introduced into evidence. Avondale alleges that the testimony of Dr. Ensley confirms that asbestos is both an oxygen-based and a metal-based compound. Avondale alleges that if this supposition is correct, then Brunet's lung cancer caused by asbestos would fall under the exclusive remedy provision of the Act. The trial court did not allow this testimony into evidence based on the Fourth Circuit's holding in Gautreaux v. Rheem Mfg. Co., supra. Under LSA-C.C.P. art. 1636, the trial court allowed Avondale to proffer a statement of evidence in regard to Dr. Ensley's testimony as well as the deposition testimonies of plaintiff's witness Dr. Ragan and defendant's rebuttal witness Dr. Liuzza and various exhibits. The issue was referred to this Court for a final determination.
This Court has made an extensive review of the proffered evidence relevant to the issue. The statement of evidence and the deposition testimonies were reviewed thoroughly as were the exhibits offered by Avondale on this matter. While both Drs. Ensley and Ragan agree that asbestos is a compound that contains oxygen and metals, they disagree on whether this makes asbestos an "oxygen-based" or a "metal-based" compound. Dr. Ensley would testify to his belief that asbestos falls into the category of both oxygen and its compounds and metals and their compounds because it is a compound which contains both of these substances. Dr. Ragan, on the other hand, disputes this assertion. It is his opinion that while asbestos does *992 contain both oxygen and metals, it is merely an "oxygen-containing" and "metal-containing" compound, but not a compound of oxygen or metal. While the distinction may appear negligible, it is important in determining the issue.
A broad reading of this section of the Act, such as what Avondale proposes, would allow poisoning or other disease resulting from contact with any compound containing oxygen or metals to be covered under the Act. This interpretation would expand the aegis of the Act beyond that which the legislature intended and would prejudice both employees and employers in employment-related suits.
Based upon the evidence before us, it is my opinion that asbestos is not a substance which the legislature contemplated including under the pre-1975 revision of LSA-R.S. 23:1031.1. My opinion is further persuaded by the fact that the Supreme Court chose not to grant writs in either Gautreaux or Thomas when the issue had been previously raised. Scientifically, asbestos cannot be considered either "oxygen and its compounds" or "metals and their compounds" for purposes of the statute. The judgment of the trial court should be affirmed.
In holding that lung cancer contracted through exposure to asbestos is not covered under the pre-1975 revision of LSA-R.S. 23:1031.1, this Court should also hold that the exclusive remedy provision of LSA-R.S. 23:1032 is inapplicable. The statute states in pertinent part:
"A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or other disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages ..." (Emphasis added).
Brunet's injuries suffered due to lung cancer are not compensable under the Act. Due to this distinction, LSA-R.S. 23:1032 is not a statutory exception to strict liability in this particular case.
In its second assignment of error, Avondale alleges that the trial court erred by refusing to charge the jury on the issue of whether Brunet contracted lung cancer after September 30, 1976. Avondale contends that under the law in effect at the time of Brunet's contraction of lung cancer, the exclusive remedy was under the Louisiana Workers Compensation Act. I disagree.
As noted previously, the Supreme Court's ruling in Cole v. Celotex, supra stands for the theory that in long-latency occupational disease cases, the key relevant events giving rise to the claim are the repeated tortious exposures resulting in continuous, on-going damages, although the disease may not be considered contracted or manifested until later. The Supreme Court further noted that when the tortious exposures which occurred prior to the effective date of the relevant Act are significant and such exposures later result in the manifestation of damages, the pre-Act law applies.[36]
The issue of whether Brunet contracted lung cancer after September 30, 1976 is irrelevant. It is undisputed that his exposure to asbestos occurred during his employment at Avondale between 1950-1978. This exposure later led to his contraction of lung cancer, but the law in effect at the time of the exposure is that which must apply. The judgment of the trial court on this issue should be affirmed.
In its third and final assignment of error, Avondale alleges in the alternative that there was no error in the decision of the jury and/or the trial court dismissing the claims against Avondale and its executive officers and insurers. It has already been determined by this Court that the trial court's dismissal of the claims against *993 the executive officers is not in dispute on appeal. The only issue is whether or not there was error in the decision of the jury and/or the trial court dismissing the claims against Avondale.
The trial court did not err by dismissing the negligence claim against Avondale. The jury found, and I agree, that Avondale was not negligent in providing a safe place to work for Brunet. Brunet failed to carry his burden of proof on this issue.
The trial judge erred in failing to submit the strict liability claim to the jury. After reviewing the record in its entirety, it is my opinion that not only did the trial judge err in this matter, but the evidence presented to the jury was sufficient to hold Avondale strictly liable for Brunet's injuries. The jury found that Brunet's exposure to asbestos-containing products at Avondale was a substantial cause of his lung cancer. This finding, coupled with the evidence contained within the record, is sufficient to convince me that Avondale should be found liable under the law of strict liability in effect at the time of the exposure.

Conclusion
In summary, it is my opinion that the trial court erred by not submitting the strict liability charge to the jury. Under the law in effect at the time of Brunet's exposure to asbestos, Avondale should be held strictly liable for the injuries that Brunet sustained. The trial court did not err in awarding Brunet $250,000 in general damages. I do not believe that the award is beyond that which a reasonable trier of fact could assess for the effects of the particular injury to a particular plaintiff under the particular circumstances. It is my opinion that the trial court erred in its formulation of Jury Interrogatory No. 9 and that the parties listed under this interrogatory were improperly listed in the suit. Also, the prior deposition testimonies of Edmond Torbonne, Willis Hazard, John Thomas, Richard Shannon and Abdon Perque were improperly admitted into evidence. The trial court erred in this matter. Finally, it is my opinion that the total award of $302,000 now assessed against Avondale cannot be reduced for the virile shares of the third party defendant manufacturers and officers. There is no evidence in the record that Brunet has settled with these parties on the lung cancer claim. Avondale's right to seek contribution from these third party defendants should be specifically reserved by the Court. The appeal against the executive officers is dismissed. The judgment of the trial court should be affirmed in part, reversed in part and amended.

REHEARING DENIED
Plaintiffs invoke Uniform Rule of Courts of Appeal 1-5 to argue that this court should have convened a five-judge panel to render its opinion of December 5, 2000, in the above-captioned appeal. That opinion, however, did not modify or reverse the trial court's judgment. By a two judge majority, this court affirmed the trial court's judgment but for different reasons. A court of appeal may, in a three-judge panel with a two judge majority and a dissenting judge, affirm a trial court's judgment for different reasons than those stated by the trial court, without the requirement of a five judge panel. See Veal v. Dwyer, 504 So.2d 884 (La. App. 5 Cir. 1987). See also Nicolaides v. Roussel, 495 So.2d 323 (La.App. 4 Cir. 1986), writ denied 497 So.2d 313 (La.1986); Dallas v. Farrington, 465 So.2d 763 (La.App. 5 Cir. 1985), affirmed 490 So.2d 265 (La.1986). A five judge panel is required when a two judge majority modifies a trial court's judgment. Examples of modifications are the re-allocation of fault among parties or a change in the calculation or amount of an award (see, for example Rester v. Manuel, 619 So.2d 655 (La.App. 5 Cir. 1993); Gretna Realty Company v. Hartford Steam Boiler Inspection and Insurance Company, 617 So.2d 215 (La.App. 5 Cir. 1993)).
Since the opinion in this matter affirms the judgment dismissing plaintiff's *994 claim against Avondale, a five judge panel is not required by Uniform Rule of Court of Appeal 1-5.
GRISBAUM, C.J., and DALEY, J., concur.
McMANUS, J., dissents. I would grant the rehearing request for reasons set forth in my original opinion.
NOTES
[1] Brunet has not raised the issue of the trial court's dismissal of the wrongful death claim. It will not be addressed by the Court.
[2] Chantrey and O'Donnell are now deceased but their insurers remained in the suit.
[3] See Rivnor Properties v. Herbert O'Donnell, Inc., 92-1103 (La.App. 5th Cir. 1/12/94), 633 So.2d 735; writ denied, 94-1293 and 94-1305 (La.9/2/94), 643 So.2d 147.
[4] Gautreaux at 978.
[5] Callaway v. Anco Insulation, Inc., 98-0397 (La.App. 4 Cir. 3/25/98), 714 So.2d 730; Meredith v. Asbestos Corp., Ltd., 97-2593 (La.App. 4 Cir. 2/18/98), 707 So.2d 1334.
[6] Denial of supervisory review is merely a decision not to exercise the extraordinary powers of supervisory jurisdiction, and does not bar reconsideration of, or a different conclusion on, the same question when appeal is taken from final judgment. Goodwin v. Goodwin, 607 So.2d 8 (La.App. 2 Cir.1992).
[7] In addition to the foregoing cases, Avondale also cites Hicks v. Liberty Mut. Ins. Co., which we have discussed previously in this opinion.
[8] Proffer "C" is his Curriculum Vitae.
[9] Proffer "E".
[10] Proffer "F".
[11] Proffer "G".
[12] Proffer "J", attached as Appendix A.
[13] Proffer "K".
[14] Proffer "N".
[15] The plaintiffs' expert, Dr. Francis Ragan, would have also restricted the definition of a metal compound to a metal containing substance that retained the characteristics and reactivity of metals, and an oxygen compound to a substance containing oxygen that retained the characteristics and reactivity of oxygen, despite the textbook definitions of "compound" that are not restrictive in these ways.
[16] For a discussion of the concept of judicial notice and its use as an evidentiary tool, see the dissent in Gautreaux.
[17] O'Regan v. Preferred Enterprises, Inc., 98-1602 (La.6/29/99), 737 So.2d 31.
[18] See the dissent in Gautreaux.
[19] The jury made the factual finding that Brunet's exposure to asbestos while working at Avondale was a cause in fact of his lung cancer. No party has appealed that finding.
[1] Cole v. Celotex Corp., 599 So.2d 1058 (La. 1992).
[2] Celestine v. Union Oil Co. of California, 94-1868 (La.4/10/95), 652 So.2d 1299.
[3] Id. at 1303.
[4] Id.
[5] Id.
[6] 2304 Manhattan Blvd. Partnership v. Louisiana Power & Light Co., 94-192 (La.App. 5th Cir. 9/14/94), 643 So.2d 1282.
[7] Id. at 1285.
[8] Phipps v. Amtrak, 94-1876 (La.App. 1st Cir. 11/20/95), 666 So.2d 341; writ denied, 95-3012 (La.2/28/96), 668 So.2d 368.
[9] Id. at 344.
[10] Celestine, supra at 1303.
[11] Id.
[12] Haydel v. Hercules Transport, Inc., 94-0016 (La.App. 1st Cir. 4/7/95), 654 So.2d 408; writ denied, 95-1171 (La.6/23/95), 656 So.2d 1018.
[13] Id. at 414.
[14] Zeno v. Grady Crawford Const. Co., Inc., 94-0858 (La.App. 1st Cir. 3/3/95), 652 So.2d 590; writ denied, 95-0857 (La.5/19/95), 654 So.2d 695.
[15] Id. at 592.
[16] Myers v. Burger King Corp., 92-0400 (La. App. 4th Cir. 5/26/94), 638 So.2d 369.
[17] Id. at 378.
[18] Id.
[19] Andrus v. State Farm Mut. Auto. Ins. Co., 95-0801 (La.3/22/96), 670 So.2d 1206.
[20] Id. at 1210.
[21] Id.
[22] Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
[23] Id. at 1260.
[24] Tramontin v. Glass, 95-744 (La.App. 5th Cir. 1/30/96), 668 So.2d 1252.
[25] Id. At 1258.
[26] Lewis v. Wal-Mart Stores, Inc., 546 So.2d 267 (La.App. 3rd Cir.1989).
[27] Id. At 274.
[28] Cavalier v. Cain's Hydrostatic Testing, Inc., 94-1496 (La.6/30/95), 657 So.2d 975.
[29] Id. at 982.
[30] Martin v. East Jefferson General Hosp., 582 So.2d 1272 (La.1991); Lynch v. Hanover Ins. Co., 611 So.2d 121 (La.App. 5th Cir.1992); writ denied, 613 So.2d 996 (La.1993).
[31] Id. at 1277.
[32] Thomas v. Armstrong World Industries, Inc., 95-2222 (La.App. 1st Cir. 6/28/96), 676 So.2d 1185; writ denied, 96-1965 (La.11/1/96), 681 So.2d 1272. See also Gautreaux v. Rheem Mfg. Co., 96-2193 (La.App. 4th Cir. 12/27/96), 694 So.2d 977; writ denied, 97-0222 (La.3/14/97), 690 So.2d 39.
[33] Gautreaux, supra at 978.
[34] Id.
[35] Id.
[36] Cole v. Celotex, supra at 1066.